*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. J. DAWKINS, Minor.

UNPUBLISHED
February 5, 2019

Nos. 344285 & 344316
Bay Circuit Court
Family Division
LC No. 16-012182-NA

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 344285, respondent-father appeals by right the trial court's order terminating his parental rights to his minor child under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions leading to adjudication), (c)(*ii*) (failure to rectify additional conditions that would lead to adjudication), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm to the child if returned to the parent). In Docket No. 344316, respondent-mother appeals by right the same order terminating her parental rights to the minor child under MCL 712A.19(b)(3)(c)(*i*), (g), and (j). Respondents' children[1], including the child at issue in this case, were removed due to domestic violence, substance abuse, and poor living conditions. During the proceedings, the conditions of both mother's and father's homes improved, but respondents failed to participate in and benefit from their service plans in any other way. For the reasons set forth herein, we affirm.

## I. FACTS

Due to mother's issues with substance abuse, the child tested positive at birth for marijuana in his system. He was removed from the home three months later, after it was discovered that the home had sewage in the basement and no running water. There were also multiple incidents of domestic violence reported between respondents. Respondents admitted to

---

[1] Respondent-father is also the father of another child, who primarily lived with her mother. Respondent-mother is also the mother of three other children, who primarily lived with their father. Each of these children were released to the custody of his or her nonrespondent parent.

several allegations in the petition: mother admitted that she used marijuana once during her pregnancy; mother and father admitted there was no running water in the home, but they stated they were living in a motel; mother admitted she had a black eye during a visit by the Department of Health and Human Services (DHHS); mother and father admitted that during a home visit in August 2016, father was arrested for marijuana possession, and mother was later arrested for 24 active warrants when she attempted to pick father up from jail.

DHHS representative Marcie Hills testified that both parents had good bonds with the child. However, early in the case, father was combative with service workers and inconsistent with his parenting visits, which were canceled in April 2017. Mother participated in domestic violence services, but she nevertheless continued to have contact with father, which led DHHS worker Shannon Clifford to opine that mother was not benefitting from her domestic violence services. Mother was also dropped from therapy for no-shows and cancelations. Both parents' psychological evaluations recommended abstention from marijuana. Both parents tested positive for marijuana before either parent had obtained a medical marijuana card.

In May 2017, Clifford reported that father's significant other (not mother) had moved into his home, and Clifford testified that the significant other's income was father's income source. However, a Children's Protective Services (CPS) allegation was substantiated regarding father and improper supervision, and a second CPS allegation was later substantiated involving father and domestic violence against one of the significant other's children. In late 2017, father was involved in an altercation with the fiancé of his other child's mother. Father had a knife during the altercation, was arrested, and was incarcerated at the time of the termination hearing.

Clifford testified that mother had obtained a home, but Clifford questioned whether she would be able to maintain and afford it. Mother had dogs that did not have shots, and cats whose litter box was overflowing, as mother could not afford to purchase litter. Clifford also testified that mother had unpaid traffic fines. When mother had obtained an apartment through DHHS, she failed to pay for utilities, which prevented her from moving into a larger apartment. Instead, mother purchased a house on a land contract. The home was in a similar condition to the home the child had been removed from, including broken and missing windows, exposed electrical wires, debris, and water in the basement. Mother was required to pay back taxes to prevent foreclosure, but mother made no payments between March 2017 and November 2017. Mother eventually sold the home to a friend for $1 in an attempt to get utilities turned on after mother was unable to obtain gas due to the amount she owed the gas company. Mother was also behind on her other utility bills. At the time of the termination hearing, mother was only a few hundred dollars shy of her limits for lifetime energy assistance through DHHS.

Father's parenting time was reinstated in November 2017, but it was discontinued in December 2018 after the child suffered night terrors, meltdowns, and intense anxiety associated with visitation. While father had done nothing to provoke the behavior, the child's Infant Mental Health specialist told Clifford that the behavior demonstrated a lack of bond between the child and father.

The termination petition asserted that grounds for termination under MCL 712A.19(b)(3)(c)(*i*), (c)(*ii*), (g), and (j) existed concerning both parents. In a carefully detailed, orally rendered opinion that spanned 27 pages of transcript, the trial court found that respondents

had not rectified the conditions that led to the adjudication because they continued to have issues with substance abuse and domestic violence. It found that respondents both lacked financial and housing stability, and that father struggled with mental health stability. It also found that respondents' failure to commit to parenting times resulted in harm to their bonds with the child. In sum, it found that both respondents failed to participate in the parent agency treatment plans or the case service plan, and their compliance toward the end of the case did not show a sufficient likelihood of change. It ordered father's parental rights terminated under MCL 712A.19(b)(3)(c)(*i*), (c)(*ii*), (g), and (j) and mother's rights terminated under MCL 712A.19(b)(3)(c)(*i*), (g), and (j). It also found that termination was in the child's best interests.

## II. RIGHT TO A JURY

Both respondents argue that the trial court should have granted them a jury at their termination hearing. We disagree because the Michigan Supreme Court has held otherwise. Whether a respondent has a statutory right to a jury during the dispositional phase of a child protective proceeding is a question of law, which this Court reviews review de novo. See *In re Amb*, 248 Mich App 144, 165; 640 NW2d 262 (2001).[2]

More than 50 years ago, the Michigan Supreme Court identified two distinct stages to child protective proceedings and limited the role of any jury used to that of determining whether admissible evidence supported the allegations of neglect or abuse contained in a petition for a child's removal. *In re Mathers*, 371 Mich 516, 531-532; 124 NW2d 878 (1963) (analyzing the proper role of the jury under Chapter 12A of the Probate Code of 1939, MCL 712A.1 *et seq.*). If the jury found on the strength of the evidence that a child came within the provisions of the chapter, the court could exercise its jurisdiction and then enter appropriate dispositional orders "including, but not limited to, termination of parental rights." *Id*. at 532.

More recently, Michigan's Supreme Court affirmed that analysis. *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). The *Sanders* Court explained that child protective proceedings in Michigan "comprise two phases: the adjudicative phase and the dispositional phase." *Id*. at 404. Ordinarily, proceedings are initiated when the state "files in the family division of the circuit court a petition containing facts that constitute an offense against the child under the juvenile code (i.e., MCL 712A.2(b))." *Id*. at 405, citing MCL 712A.13a(2); MCR 3.961. If the court authorizes the petition, the respondent parent(s) can admit the allegations in the petition, plead no contest to them, or "demand a trial (i.e., an adjudication) and contest the merits of the petition." *In re Sanders*, 495 Mich at 405. Respondent parents who demand a trial are entitled to a jury. *Id*.; MCR 3.911(A). "When the petition contains allegations of abuse or neglect against a parent, MCL 712A.2(b)(1), and those allegations are proved by a plea or at the trial, the adjudicated parent is unfit." *In re Sanders*, 495 Mich at 405. Once the allegations are proved and a court assumes jurisdiction over a child, the proceedings enter the dispositional phase, during which "the respondent is not entitled to a jury determination of facts." *Id*.; MCR 3.911(A).

---

[2] Contrary to the argument of DHHS, mother preserved this issue by filing a jury request on January 10, 2017.

This Court is bound by decisions of the Michigan Supreme Court "except where those decisions have been *clearly* overruled or superseded . . . ." *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016). Generally, a decision of the Michigan Supreme Court is clearly superseded when a statute has been amended to expressly repudiate a court decision or entirely repealed. *Id*. at 131 n 32. The Michigan Supreme Court has the obligation to overrule or modify obsolete caselaw, and until that time, this Court is bound by that caselaw. *Id*. at 192-193. Accordingly, we conclude that respondents were entitled to a jury only at the adjudication, not at the termination hearing.

## III. PLEA CONSEQUENCES

Both respondents argue that they are entitled to reversal of their terminations because the trial court failed to inform them of the consequences of their pleas. Petitioner agrees that the trial court erred, but contends that the error does not require reversal because it did not affect the outcome of respondents' proceedings. We agree with petitioner.

This issue is unpreserved because neither respondent raised the sufficiency of the trial court's plea warnings below. See *Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). This Court reviews unpreserved issues for plain error affecting a respondent's substantial rights. *Id*. at 8-9. An error affects a party's substantial rights when it causes prejudice, which means to affect the outcome of the proceedings. *Id*. at 9.

In this case, mother admitted the following at the adjudication: (1) she used marijuana during her pregnancy; (2) the home was unsafe; (3) she had a black eye during a home visit; and (4) she was arrested on August 12, 2016, for 24 active warrants. At the termination hearing, mother herself testified regarding each of these facts. Accordingly, each admission was established by nonhearsay evidence at the termination hearing.

Father admitted the following at the adjudication: (1) the home was unsafe; (2) it had no water due to a broken valve; and (3) he was arrested for possession of marijuana. Clifford testified at the termination hearing that father's home was appropriate and had its utilities turned on, and the trial court did not find that father's home was unsafe. Therefore, this fact could not have affected the outcome of father's proceedings.

The only admission that was not established by nonhearsay evidence was that father had been arrested for possession of marijuana. This fact did not prejudice father because the trial court did not reference this fact when stating what had brought the children into its jurisdiction or when making its findings regarding termination. Accordingly, the admission did not affect the outcome of father's case.

## IV. ASSISTANCE OF COUNSEL

Mother argues that she was deprived of the effective assistance of counsel because her lawyer failed to enter a lease agreement into the record and failed to object to the trial court's decision to take judicial notice of mother's criminal record. We conclude that mother's arguments lack merit.

This Court applies the same standards to ineffective assistance of counsel claims in child protective proceedings as it applies in criminal proceedings. *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988).[3] These standards require a party to move the trial court for a new trial or evidentiary hearing to preserve a claim that counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Mother did not do so in this case, and therefore, this issue is unpreserved.

The Due Process Clause indirectly guarantees the effective assistance of counsel in child protective proceedings. *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). To show that counsel is ineffective, a person must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability the deficient performance prejudiced the person. *People v Pickens*, 446 Mich 298, 312; 521 NW2d 797 (1994). The person must overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

First, regarding the admission of the lease agreement, mother has failed to show that counsel's decision was either substandard or prejudicial. What evidence to present is a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). During delivery of its ruling after the termination hearing, the court mentioned that there was no lease agreement on file for mother. Mother's counsel explained that there was a lease agreement, but he made the strategic decision not to admit it because he believed it emphasized her transiency and undercut her testimony that she would shortly receive the house back. In response, the trial court stated that the lack of rental agreement was "not in any way, not even remotely, determinative of this; it was just something I mentioned . . . ." We conclude that counsel's decision not to admit evidence that emphasized that mother no longer owned her home was not unreasonable, and because the trial court clearly stated that the evidence was not determinative, we conclude that its admission would not have affected the outcome of mother's case.

Second, mother argues that counsel provided ineffective assistance by failing to object to the trial court's decision to take "judicial notice" of her criminal history. Counsel need not make futile challenges. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). MRE 201 provides that the trial court may take judicial notice of a fact that is not subject to reasonable dispute because it is "generally known within the territorial jurisdiction of the trial court . . . ." MRE 201(b). A judge "may take judicial notice of the files and records of the court in which he sits." *Knowlton v Port Huron*, 355 Mich 448, 452; 94 NW2d 824 (1959).

In this case, the trial court stated that it could take judicial notice of mother's criminal history because she had "been in front of me a number of times." Because the trial court may take judicial notice of the records of the court in which it sits, counsel would have had no basis to challenge the trial court's decision. Mother has also failed to demonstrate prejudice because the trial court did not use mother's criminal history to justify any of its findings related to the

---

[3] Although cases decided before November 1, 1990, are not binding precedent, MCR 7.25(J)(1), we can consider them persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

statutory grounds or the child's best interests. Accordingly, even if counsel erred, his error did not prejudice mother.

## V. STATUTORY GROUNDS

This Court reviews for clear error the trial court's factual findings and ultimate determinations regarding the statutory grounds for termination. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Id.*

MCL 712A.19b(3)(c) allows the trial court to terminate a parent's rights if either of the following exists:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

At the time of termination, MCL 712A.19b(3)(g) provided that the trial court could terminate if

> [t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[4]

And MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if

> [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

---

[4] As of June 12, 2018, this statutory ground now provides in pertinent part that termination is appropriate when "[t]he parent, although in the court's discretion, financially able to do so, fails to provide proper care and custody for the child . . . ." MCL 712A.19b(3)(g) as amended by 2018 PA 58.

## A. DOCKET NO. 344285

In Docket No. 344285, father argues that the trial court erred by finding that MCL 712A.19(b)(3)(c)(*i*), (*ii*), (g), and (j) supported terminating his parental rights.

First, father argues that the trial court clearly erred when it found that MCL 712A.19(b)(3)(c)(*i*) supported termination. MCL 712A.19(b)(3)(c)(*i*) applies when the conditions that brought the children into care continue to exist despite time to make changes and the opportunity to benefit from services. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

In this case, the conditions that brought the child into care included father's possession of marijuana, unsafe living conditions, and domestic violence. The trial court found that MCL 712A.19(b)(3)(c)(*i*) was supported by father's lack of participation in the service plan, which indicated there was no sufficient likelihood of change.[5]

Regarding substance abuse, the court found that father failed to participate in a substance abuse assessment and testing. It also found that he continued to use marijuana after he was diagnosed with cannabis abuse and despite the fact that his doctor said he should not be using marijuana with his other prescriptions.

These findings were not clearly erroneous. Clifford testified that father failed to participate in a substance abuse assessment and consistently tested positive for marijuana before he had a medical marijuana card. Father's psychological evaluation stated that abstinence from marijuana would be an essential component of father's recovery from criminality, anger issues, and the involvement of CPS. Dr. Movva, father's psychiatrist, testified that she did not recommend that anyone use marijuana with other medications. However, father obtained a medical marijuana card and continued to use marijuana. We are not convinced the trial court made a mistake when it found that father had not addressed his substance abuse.

The trial court also found that domestic violence continued to be an issue in this case. Mid-Michigan Community Action Agency parenting supervisor Rebecca Simpson testified that father engaged in hostility and angry outbursts throughout the case, sometimes when the child was present. Clifford testified that, while father had become more appropriate in his communications, the violent altercation that resulted in his arrest indicated that this issue was unresolved. Finally, DHHS worker Andrea Marshall testified that she became involved in a case concerning father during which father was alleged to have committed domestic violence against a child in his significant other's home. Clifford testified that, regardless of whether father actually injured the child, it was concerning that the child was injured while in father's care. We are not definitely and firmly convinced that the trial court made a mistake when it found that father's actions supported a continuing concern regarding domestic violence.

---

[5] While father argues that the trial court erred by finding that this statutory ground applied because he made repairs to the home, the trial court in fact found that father had repaired his home. Father's argument does not address any error.

Second, father argues that the trial court clearly erred when it found that MCL 712A.19(b)(3)(c)(*ii*) supported termination. We agree, but we conclude that this error was harmless. In this case, the trial court found that father's incarceration was an additional condition supporting terminating his parental rights. The trial court may not terminate a parent's parental rights solely on the basis of parental incarceration. See *Mason*, 486 Mich at 152. Additionally, termination under MCL 712A.19(b)(3)(c)(*ii*) requires that the parent "has been given a reasonable opportunity to rectify the conditions[.]" The trial court did not make any finding to support that father had been given a reasonable opportunity to rectify the condition or that there was no likelihood the situation would be rectified within a reasonable time. As such, the trial court's findings were insufficient under this statutory ground.

However, this error is harmless. If one statutory ground supports terminating a person's parental rights, error with respect to another statutory ground is harmless. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000). As previously discussed, MCL 712A.19(b)(3)(c)(*i*) supported terminating father's parental rights.

MCL 712A.19(b)(3)(g) and (j) also supported termination. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *White*, 303 Mich App at 710. It is also evidence that the child will be harmed if returned to the parent's care. *Id.* at 711. When considering possible harm to the child, the trial court may consider the potential psychological harm to the child caused by the parent's conduct. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

The record in this case reflects that father had not complied with his service plan or benefitted from it. Father was instructed to abstain from using marijuana, but he did not do so. Father continued to engage in criminality and had two incidences of CPS involvement. Father was inconsistent with his parental visits throughout this case. While father argues that suspension of his parenting time was not his fault, that is true only of the second suspension—the first time father's visits were suspended in April 2017 was because his failure to attend parental visits was affecting the child. The fact that the child was afraid of father and no longer bonded to him when visits were recommenced was a direct result of father's prior decision not to visit the child. The child demonstrated psychological harm when the visits were reinstated because he suffered through night terrors and began acting out. Finally, while father was participating in counseling toward the end of the case, father's participation was not consistent throughout the case and Dr. Murray testified that father would require a significant amount of time to deal with his issues and past traumas. We are not definitely and firmly convinced that the trial court made a mistake when it found that MCL 712A.19(b)(3)(g) and (j) applied in this case.

## B. DOCKET NO. 344316

In Docket No. 344316, mother argues that the trial court erred by finding that MCL 712A.19(b)(3)(c)(*i*), (*ii*), (g), and (j) supported terminating her parental rights.

We note that, while mother argues that MCL 712A.19(b)(3)(c)(*ii*) did not support termination, the trial court explicitly found that this statutory ground did not apply to mother. Additionally, to the extent mother argues that the trial court did not consider that she fixed her house and it held her poverty against her, the record does not support these arguments. The trial

court explicitly found that mother had made repairs to the home, and it stated that it did not hold mother's poverty against her and that there was "no law against being poor," but that mother's poor financial decisions left her without stability and a safe environment for the child.

First, mother argues that the trial court erred by finding that termination was appropriate under MCL 712A.19(b)(3)(c)(*i*) because mother had completed domestic violence counseling and separated from father, she had acquired new housing, and her medical marijuana use did not endanger the children. We disagree.

As previously stated, MCL 712A.19(b)(3)(c)(*i*) applies when the conditions that brought the child into care continue to exist despite time to make changes and the opportunity to benefit from services. *White*, 303 Mich App at 710. In this case, the conditions that brought the child into care included marijuana use by mother, unsafe living conditions, and domestic violence. The trial court's findings that substance abuse and domestic violence continued to be issues were not clearly erroneous.

DHHS representative Hills testified that mother began domestic violence counseling early in the case, but Clifford testified that mother continued to maintain a relationship with father while attending counseling. When asked if she would allow father to have contact with the child at issue should the court terminate his parental rights and prohibit contact, mother said that she would not, that it was not "worth [her] kid." At the same time, however, mother indicated that she did not necessarily believe her older children's allegations of domestic violence by father and suggested that the children may have fabricated the allegations. Mother's willingness to allow her older children from another relationship to have continued contact with father, whom she knew was capable of domestic violence, who had a substantiated complaint involving violence against another child, and who, at the time of the termination hearing, was in jail after having pleaded guilty to charges arising from a violent alteration involving a weapon, arguably supported the trial court's finding that she had not benefitted from the domestic violence portion of her treatment plan.

Additionally, mother's psychological evaluator indicated that marijuana was not endorsed for any psychological reasons, and if she was taking marijuana, she should not be taking Klonopin. Mother testified at the termination hearing that she was both using marijuana and taking Klonopin. We are not definitely and firmly convinced that the trial court erred by finding that substance abuse continued to be an issue in this case.

The record also supported terminating mother's parental rights under MCL 712A.19(b)(3)(g) and (j) because she did not comply with or benefit from her service plan.[6]

As well as the issues concerning domestic violence and substance abuse that have been previously discussed, the record reflects that mother chose to spend money on keeping multiple pets, she maintained inconsistent employment, and she made poor decisions regarding her

---

[6] We note that mother's arguments, which concern her parenting skills and the safety of her home, again fail to address the basis of the trial court's decision.

utilities. The record supported the trial court's findings because the dogs were not licensed and were the source of mother's dog-related tickets and fines, and mother was spending money she desperately needed for her family's needs on litter for the cats. Mother declined Clifford's assistance in finding steady employment, worked unsteady and part-time jobs early in the case, and did not get steady employment until the goal for the child was changed to adoption. Mother also decided not to pay her utility bills, and at the time of termination, she owed $2,600 on electric bills. Summarizing the situation, Clifford opined that mother's problems arose from "the choices she continues to make [and] are digging her farther, and farther into the holes that she's in, which is causing her to struggle, financially." The record indicates that mother did not participate in or benefit from services designed to help her become more financially stable. We are not definitely and firmly convinced that the trial court made a mistake when it found that mother's lack of participation in and benefit from the service plan demonstrated that she could not provide proper care and custody and that the child was likely to be harmed if returned to her home.

## VI. BEST INTERESTS

Both respondents argue that the trial court clearly erred when it determined that terminating their parental rights was in the child's best interests. Father argues that he was engaged in services, attended parenting time, and was appropriate during visits. Mother argues that the trial court failed to consider that she participated in services, made repairs to the home, found employment, and was bonded with the child. We are not convinced that the trial court made a mistake when it found that termination was in the child's best interests regarding both respondents.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error the trial court's determination regarding a child's best interests. *White*, 303 Mich App at 713. A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Mason*, 486 Mich at 152.

The trial court should weigh all the evidence available to determine the child's best interests. *White*, 303 Mich App at 713. The court should consider a wide variety of factors, which may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The trial court may also consider the parents' visitation history with the child, the parents' compliance with the service plan, and the possibility of adoption. *White*, 303 Mich App at 714.

The trial court found that the child required permanence within a reasonable time and a safe, stable, and protective home, that respondents had not complied with or benefitted from their service plan, and that adoption would be in the child's best interests. We have already described the parents' lack of participation in services. Clifford testified that the child's issues surrounding inconsistent parental visitation demonstrated that he required structure and stability. The child did well in foster care throughout the case, and Clifford opined that the child would have more stability in his foster home. Finally, while both parents initially had a good bond with the child,

their choices regarding visitation weakened that bond. The child no longer appeared bonded with father after his failure to attend visitation resulted in those visits being canceled. Mother was frequently late to visits or left them early, she failed to make appointments with a home-based parenting service that would have given her more time with the child and was dropped from the service, and the child's visitation supervisor testified that the child was not upset when leaving visits and that mother's bond with the child was closer to that of a playmate. Finally, the foster parent testified that she was willing to adopt the child. After reviewing the record evidence, we are not definitely and firmly convinced that the trial court made a mistake by finding that termination was in the child's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause