*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRONSON HEALTH CARE GROUP, INC.,

Plaintiff-Appellee,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

Defendant,

and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellant.

UNPUBLISHED
June 20, 2019

No. 341200
Kalamazoo Circuit Court
LC No. 2017-000347-NF

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant, Farm Bureau General Insurance Company of Michigan (Farm Bureau), appeals by leave granted the trial court's denial of its motion to dismiss plaintiff, Bronson Health Care Group, Inc.'s (Bronson) claims. For the reasons explained in this opinion, we affirm the trial court's denial of summary disposition regarding its claims for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, for medical services provided to Charles E. Burgan, but reverse the trial court's denial of Farm Bureau's motion for summary disposition respecting Bronson's claims for PIP benefits for medical services it provided to the four other individuals insured by Farm Bureau.

## I. BACKGROUND

The basic facts are not in dispute. In 2016, five individuals—Larry J. Bailey, Charles E. Burgan, Edwin P. Hollenbeck, Tyler D. Kiewiet, and James H. Lininger—received treatment at Bronson for injuries arising from separate automobile accidents. At the time of their respective

-1-

accidents, all five individuals were insured under no-fault automobile insurance policies issued by Farm Bureau, and Bronson billed Farm Bureau for the medical services provided. Farm Bureau paid many of the charges but refused to pay the entire amount.

Significant to the issues on appeal, all five injured individuals signed documents containing assignment clauses. Specifically, before receiving treatment at Bronson, each individual signed a "Registration Release Form" containing several paragraphs relating to a variety of topics. Notably, the forms contained an "Assignment of Rights" clause regarding insurance benefits, which stated:

> **Assignment of Rights:** I assign to Bronson all rights to bill for services I receive. I give Bronson all rights to pursue payment of my bills. This means that Bronson can, for example:
>
> - Send my bills to insurance companies and health plans. Communicate with them for the purpose of getting payment
>
> - Appeal the denial of payment or an adverse benefit determination
>
> - File a lawsuit to get payment of a bill
>
> - Be involved in any lawsuit or proceeding which involves my bill
>
> - This includes pursuing all costs, interests, penalties and attorney fees allowed by law. I give up all rights to settle, release, or retain monies for my Bronson bill. I give up the right to take any action which would compromise payment or reimbursement of my Bronson bill.

By signing the registration forms, the patients also agreed to "assist Bronson with pursuit of [his or her] insurance benefits." If charges were not covered by insurance, the patients acknowledged their responsibility "to pay all Bronson charges not covered by insurance" and to pay any "difference between Bronson's charges and the amounts paid by insurance." None of the registration release forms contained any information regarding the specific medical treatment that would be provided, the dates of the services, or the estimated costs of the services. The registration forms also did not specify that the patients designated Bronson as their respective agent for any purpose.

Burgan also signed an assignment of rights after being treated. The post-treatment assignment specified the dates of service and the applicable charges. Regarding these specific dates and charges, Burgan agreed that Bronson "may pursue payment" of his medical bills against "any responsible insurance payer."

On August 18, 2017, Bronson sued Farm Bureau. Bronson did not plead an independent, direct cause of action against Farm Bureau.[1] Instead, Bronson sued based upon three theories: (1) breach of contract based on an assignment of benefits by the insureds, (2) breach of contract as an authorized representative of the insureds, and (3) entitlement to a declaratory judgment as an interested party that Farm Bureau bore liability for PIP benefits. Farm Bureau moved for summary disposition on all counts under MCR 2.116(C)(8) and (10). Farm Bureau argued that the insured's assignments executed before treatment were void under MCL 500.3143 because they assigned rights to benefits payable in the future. Farm Bureau also asserted that the assignments executed without its written consent were prohibited under the terms of its insurance policies' antiassignment provisions. It contended that, in the absence of valid assignments, Bronson lacked status as a real party in interest. Farm Bureau also argued that Bronson lacked any entitlement to declaratory relief because no contract existed between Farm Bureau and Bronson, and the interested parties, the insureds, were not parties to the action.

Bronson opposed State Farm's motion by arguing that the assignments were not invalid under MCL 500.3143 because by signing their respective assignments the patients immediately incurred the costs of their treatment. Bronson also argued that MCL 500.3143 did not apply to Burgan's post-treatment assignment. Bronson asserted that Farm Bureau's antiassignment clauses in its insureds' policies were void as a matter of public policy. Further, Bronson claimed that it had real-party-in-interest status based on the assignments which permitted it to pursue recovery of benefits as the insureds' agent. Bronson also claimed that it had entitlement to declaratory relief because it had an interest in obtaining payment of its unpaid bills which constituted an actual controversy concerning Farm Bureau's liability.

Following a hearing, the trial court denied Farm Bureau's motion. Relying on *Roger Williams Ins Co v Carrington*, 43 Mich 252; 5 NW 303 (1880), the trial court ruled that Bronson's breach of contract claim in Count I, based on the registration release forms' assignments, could proceed because Farm Bureau's insurance policies' antiassignment clauses were unenforceable. The trial court declined to dismiss Count II because it concluded that Bronson stated an alternative breach of contract claim as the insureds' agent representing the interests of the patients. The trial court did not specifically address whether, under MCL 500.3143, the assignments in the registration release forms signed by the patients before any services were provided by Bronson were void. Nevertheless, it denied Farm Bureau's motion. The trial court also declined to definitively rule on Farm Bureau's challenge to Bronson's declaratory judgment claim in Count III and denied Farm Bureau's motion in that regard without prejudice. The trial court's decision prompted Farm Bureau to file an interlocutory application

---

[1] Relevant to this case, in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 195, 200, 218; 895 NW2d 490 (2017), our Supreme Court concluded that a healthcare provider does not possess an independent statutory cause of action against a no-fault insurer for recovery of PIP benefits. The Supreme Court also specified that its decision was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40. Notably, while past or presently due benefits may be assigned, under MCL 500.3143 a right to benefits payable in the future is prohibited. *Id*.

for leave to appeal, which this Court granted. *Bronson Health Care Group, Inc v Farm Bureau Mut Ins Co of Mich*, unpublished order of the Court of Appeals, entered June 4, 2018 (Docket No. 341200).

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007). We also review de novo questions involving statutory interpretation or the interpretation of a contract. *Id.* Contract interpretation requires determination and enforcement of the parties' intent based on reading the entire agreement and applying the plain language of the parties' agreement. *Id.*

"The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature." *Ford Motor v Dep't of Treasury*, 288 Mich App 491, 496; 794 NW2d 357 (2010) (citation omitted). Determining the Legislature's intent begins with the language of the statute. *Id.* "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (citation omitted). "If the statutory provision at issue is clear and unambiguous, it must be enforced as written, and no judicial construction is permitted or required." *Lockport Twp v Three Rivers*, 319 Mich App 516, 520; 902 NW2d 430 (2017).

We also review de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. *Id.* at 213. The court accepts all well-pleaded factual allegations as true and construes them in a light most favorable to the nonmoving party. *Id.* A motion under MCR 2.116(C)(8) is appropriately granted where the alleged claims are unenforceable as a matter of law and no factual development could possibly justify recovery. *Id.* A motion for summary disposition under MCR 2.116(C)(10) should be granted "if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id.*

## III. ANALYSIS

Farm Bureau argues that the assignments of benefits in Bronson's registration release forms executed by the insureds before Bronson provided services were void under MCL 500.3143 as assignments of benefits payable in the future. We agree.

MCL 500.3143 provides: "An agreement for assignment of a right to benefits payable in the future is void." This Court clarified in *Prof Rehab Assoc v State Farm Mut Automobile Ins*, 228 Mich App 167, 172; 577 NW2d 909 (1998) that the statute unambiguously requires

-4-

distinguishing rights to benefits payable in the future from rights "to past due or presently due benefits." Because the statute bans assignments of future benefits, when analyzing assignments, a court must "determine whether the assignment in question purports to assign only past due and presently due benefits" or "purports to assign future benefits as well." *Id*. The central issue for determining the validity of an assignment under MCL 500.3143, therefore, rests on when the benefits being assigned are "payable." If the assignment conveys rights to "benefits payable in the future," the assignment is void.

Under the no-fault act, PIP benefits are "payable for . . . [a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). In *Covenant*, our Supreme Court determined that a claim for PIP benefits belongs to the person who sustained accidental bodily injury and that a healthcare provider lacks a direct statutory cause of action against a no-fault insurer. *Covenant*, 500 Mich at 216-217. Our Supreme Court clarified that its "conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." *Id*. at 217. Alternatively, even after *Covenant*, an insured may assign his or her right to benefits to a healthcare provider in certain circumstances. *Id*. at 217 n 40.

Under MCL 500.3143, if the registration release forms Bronson required patients to execute assigned rights to PIP benefits payable in the future, such assignments would be void. See *Prof Rehab*, 228 Mich App at 173. To determine if the assignments were void under MCL 500.3143 requires ascertaining when benefits were payable, i.e., whether any of the insureds' benefits were past due or presently due when the assignments were executed. Statutory interpretation is required to determine the time when benefits become "payable." In *Covenant*, our Supreme Court explained that, as used in the no-fault act, the term "payable," which is not statutorily defined, is afforded its common and ordinary definition; that is, the term "payable" means " 'that may, can, or must be paid.' " *Covenant*, 500 Mich at 209 & n 30, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). Respecting when benefits become payable under the no-fault act, MCL 500.3142 provides:

> (1) Personal protection insurance benefits are *payable* as loss accrues.

> (2) Personal protection insurance benefits are *overdue* if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. . . . [Emphasis added.]

MCL 500.3142(1) specifically provides that PIP benefits are payable as loss accrues. Although the word "as" has several possible meanings, one of the common, dictionary definitions for the word "as" is "when." *Merriam-Webster's Collegiate Dictionary* (11th ed). The word "as" also means "to the same degree or amount." *Merriam-Webster's Collegiate Dictionary* (11th ed). Reading MCL 500.3142 as a whole and in the larger context of the no-fault act, MCL 500.3142(1) plainly establishes the temporal point when benefits become payable by specifying that PIP benefits are payable "as loss accrues." Under MCL 500.3110(4), PIP benefits "accrue not *when* the injury occurs but *as* the allowable expense, work loss or survivors' loss is incurred." (Emphasis added). Thus, to be "payable as loss accrues," benefits must be

payable under MCL 500.3142(1) when, and to the same degree, as loss is incurred. That MCL 500.3142(1) is relevant to when benefits become payable is also supported by reading MCL 500.3142(1) and MCL 500.3142(2) together; that is, MCL 500.3142(2) plainly describes when benefits payments by a no-fault insurer become "overdue" and, in the context of a statute dealing with matters of timing relating to payment of PIP benefits, MCL 500.3142(1) logically describes when benefits become "payable" in the first instance.

Contrary to Farm Bureau's argument, we find no conflict between MCL 500.3142(1) and MCL 500.3142(2). MCL 500.3142(2) defines when benefits become overdue for purposes of assessing interest and attorney fees in instances of unreasonably delayed payments of PIP benefits by an insurer. See *Moore v Secura Ins*, 482 Mich 507, 518-519; 759 NW2d 833 (2008). When MCL 500.3142(1) and MCL 500.3142(2) are read in harmony, benefits become "payable" under MCL 500.3142(1) when loss accrues, and the provision of proof of loss triggers the insurer's obligation to actually make payment under MCL 500.3142(2), see *Moore*, 482 Mich at 518-519, and benefits become overdue under MCL 500.3142(2) if payment is not made within 30 days after an insurer receives proof of loss.

The determination of *when* a "loss accrues" is essential. "Under the no-fault act, PIP benefits accrue not when the injury occurs but as the allowable expense . . . is incurred." *Karmol v Encompass Prop & Cas Co*, 293 Mich App 382, 389; 809 NW2d 631 (2011), quoting MCL 500.3110(4). Further, "a claimant 'incurs' an expense when he or she becomes 'liable' for the cost." *Id.* at 390. Reading MCL 500.3142(1) together with MCL 500.3110(4), benefits become payable when the allowable expense or other covered loss is incurred. See generally *Allard v State Farm Ins Co*, 271 Mich App 394, 400; 722 NW2d 268 (2006) ("Until the expense is incurred, the insured's entitlement to benefits does not accrue and the insurer's liability to pay the claim does not attach."). Given that loss accrues as the allowable expense is incurred, to decide when benefits become payable it is necessary to determine when an allowable expense is "incurred."

"To 'incur' means '[t]o become liable or subject to, [especially] because of one's own actions.'" *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003), quoting *Webster's II New Collegiate Dictionary* (2001). In this context, to be "liable" means to be "'responsible or answerable in law' or 'legally obligated' to pay that expense." *Clark v Al-Amin*, 309 Mich App 387, 396; 872 NW2d 730 (2015) (citation and brackets omitted). In other words, "a claimant's right to PIP benefits arises when the claimant finds himself or herself on the hook for an expense." *Karmol*, 293 Mich App at 390. "An insured becomes liable for an expense when he accepts the medical treatment for which he (or his insurer) is being charged." *Clark*, 309 Mich App at 397. "Generally, one becomes liable for the payment of services once those services have been rendered." *Community Res Consultants, Inc v Progressive Mich Ins Co*, 480 Mich 1097, 1098; 745 NW2d 123 (2008).

In this case, Bronson relied on the registration release forms that the insureds all executed as part of the registration process required by Bronson as the bases for its claims for recovery of PIP benefits related to services provided them. The registration release forms stated that each patient assigned to Bronson "all rights to bill for services I receive" and assigned Bronson the insureds' rights to seek payments, sue for payments, and take any action related to payment or reimbursement of the bills. The registration forms did not specify services already provided, the

nature of any services that would be provided, nor did the forms indicate any charges incurred at the time of signing. The forms did not specify any estimated charges for any services. The registration release forms signified that the patients would receive services in the future. Nothing indicated that any services were already provided or charges incurred before the patients executed the forms.

To avoid the application of MCL 500.3143, Bronson contends that *Proudfoot* supports its position that the insureds incurred the costs of their medical care the moment they signed the pretreatment registration release forms consenting to medical treatment and agreeing to responsibility for payment of charges not covered by insurance. Bronson posits that the assignment provisions in the registration release forms did not constitute assignments of benefits payable in the future.

In *Proudfoot*, the plaintiff sought $220,500 in benefits to pay for modifications to her home. *Proudfoot*, 469 Mich at 478. Noting that the plaintiff "had not yet taken action to become liable for the costs of the proposed home modifications," the Court determined that the expenses were not yet "incurred." *Id*. at 484. In a footnote, the Court stated:

> An insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services. Should the insured present a contract for products or services rather than a paid bill, the insurance company may, in order to protect itself, make its check payable to the insured and the contractor. [*Id*. at 484 n 4.]

Since *Proudfoot*, our Supreme Court has generally reiterated that charges may be incurred "by various means, including a contract for products and services or a paid bill." *Douglas v Allstate Ins Co*, 492 Mich 241, 268; 821 NW2d 472 (2012) (quotation marks and citation omitted). Although *Proudfoot* recognized that a plaintiff may incur liability by entering into a contract, *Proudfoot* is distinguishable from this case because it contemplated a contract for specific work from which it was apparent that the insured had contracted, i.e., assumed liability, for an allowable expense. Indeed, the amount of the liability incurred by the plaintiff in *Proudfoot*, and the resulting PIP benefit, constituted a known sum. By contemplating the writing of a check, *Proudfoot* concerned a contract for specific services that constituted known allowable expenses, resulting in a specific discernable amount of benefits payable to the insured.

In the present case, however, by signing the registration release form, nothing indicated that the insureds incurred any "allowable expense" when the services to be provided remained unknown and to be rendered in the future. Further, the corresponding charges were undetermined and to be billed in the future. We conclude that the general principle articulated in the *Proudfoot* footnote does not extend to the current facts because the insureds at the time of signing the document have not yet incurred allowable expenses by entering into an open-ended contract for unspecified services in the future in unknown amounts. Concluding otherwise would not accord with the general proposition that PIP benefits are only payable for necessary allowable expenses actually incurred. See *Douglas*, 492 Mich at 267 ("[T]he statutory requirement that 'charges' be 'incurred' requires some degree of liability that exists as a result of the insured's actually having received the underlying goods or services."); *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 342; 830 NW2d 428 (2012) ("The insurer 'is

not obliged to pay any amount except upon submission of evidence that services were actually rendered and of the actual cost expended.' "). See also *Manley v Detroit Auto Inter-Ins Exch*, 425 Mich 140, 157; 388 NW2d 216 (1986) (finding, in the context of an action for declaratory judgment, that benefits for anticipated future services were not payable until the expenses were actually incurred). In short, *Proudfoot* did not consider or answer the question whether liability is incurred for allowable expenses within the meaning of the no-fault act by signing a registration release form for unspecified future medical services.

We recognize that contracts for medical services entered before services are provided generally are enforceable against a patient and often involve "peculiar circumstances," including the fact that "nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her." See *Holland v Trinity Health Care Corp*, 287 Mich App 524, 530-531; 791 NW2d 724 (2010) (quotation marks and citation omitted). Nevertheless, for purposes of the no-fault act, *when* an insured incurs an "allowable expense" cannot be determined solely by looking at when open-ended contracts for future services like the registration release forms in this case were signed. In the no-fault insurance context, where a contract contains no indication of the medical treatment to be provided, we believe that the insured does not become legally obligated to pay an "allowable expense" by signing the agreement. Instead, the insured incurs an "allowable expense" when the necessary treatment is identified and the treatment is accepted by the insured at the time services are provided. In reaching this conclusion, it bears emphasizing that PIP benefits accrue when an allowable expense is incurred. See MCL 500.3110(4); *Karmol*, 293 Mich App at 389. A contract that contemplates unspecified future services for unknown charges is not, on its face, a contract for an allowable expense, meaning that an allowable expense has not been incurred and PIP benefits are not yet payable. See MCL 500.3110(4); MCL 500.3142(1).

In this context, at the time the insured patient signs a contract for services, the patient has not actually become liable for any expense, let alone an "allowable expense" under the no-fault act. The hospital or medical service provider must provide services giving rise to a charge before a patient becomes responsible to pay for such services. This comports with the principle that, if no time is fixed for payment, payment cannot be demanded until after the completion of the work. See *Veley v Burt*, 242 Mich 253, 255; 218 NW 801 (1928). The provision of medical services serves as a condition precedent to a patient's legal obligation to pay for any services. See generally *Able Demolition Inc v Pontiac*, 275 Mich App 577, 583; 739 NW2d 696 (2007) (explaining conditions precedent). Accordingly, because a patient does not have to pay for services that have not been provided—and might never be provided—a contract for unspecified future services cannot result in a patient incurring an allowable expense at the time a contract is signed when a contract is silent about the services to be provided. The general rule—that "one becomes liable for the payment of services once those services have been rendered"—applies to determine when the insured incurred an allowable expense for purposes of the no-fault act. See *Community Res*, 480 Mich at 1098. Indeed, particularly in the context of medical services, it has often been recognized that expenses are generally incurred at the time of treatment. See, e.g., *Clark*, 309 Mich App at 397 (stating that an "insured becomes liable for an expense when he accepts the medical treatment for which he (or his insurer) is being charged."); *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996) (stating "[o]bviously, plaintiff became liable for her medical expenses when she accepted medical treatment."). Because no

allowable expense has been incurred at the time the contract for services is signed, benefits are not presently "payable" or past due; instead, the loss is incurred when services are provided and are then payable.

In this case, one of the insureds—Burgan—executed a document assigning his rights to Bronson after he received treatment. The post-treatment assignment specified the dates of service and the applicable charges. Regarding these specific dates and charges, Burgan agreed that Bronson "may pursue payment" of his medical bills against "any responsible insurance payer." Having received treatment, Burgan incurred loss in connection with the services provided. See *Community Res*, 480 Mich at 1098. Accordingly, PIP benefits became "payable" under MCL 500.3142(1). See also MCL 500.3110(4). Burgan's assignment to Bronson of his rights to payment of these past or presently due benefits, therefore, did not run afoul of MCL 500.3143. See *Professional Rehab Assoc*, 228 Mich App at 172-174.

The pretreatment assignments upon which Bronson relies, however, were executed before any treatment was provided. Bailey, Hollenbeck, Kiewiet, and Lininger only signed the registration release forms which plainly did not assign rights to pursue benefits for past or presently due services Bronson already provided. Instead, these insureds assigned their rights to PIP benefits for unknown services to be provided in future. The registration release forms did not render the insureds liable within the meaning of the no-fault act at the time of their execution because the insureds did not become legally responsible to pay for allowable expenses at that time. Because all of the rights to benefits contemplated by the assignments involved rights to benefits payable in the future, these assignments executed before treatment were void under MCL 500.3143. Consequently, the trial court erred by denying Farm Bureau's motion for summary disposition regarding Bronson's claims based upon the void pretreatment assignments executed by the insureds.

We affirm the trial court's decision regarding Bronson's claims based upon Burgan's assignment of his rights to payment of PIP benefits; however, in all other respects, the trial court erred by denying Farm Bureau's motion for summary disposition respecting the registration release forms' assignments executed by the insureds because, in the absence of valid assignments, Bronson's claim failed to state a claim upon which relief may be granted, and as a healthcare provider, Bronson had no independent statutory claim against Farm Bureau. See *Bronson Healthcare Group, Inc v Mich Assigned Claims Plan*, 323 Mich App 302, 305; 917 NW2d 682 (2018). Accordingly, Farm Bureau was entitled to summary disposition as a matter of law respecting Bronson's claims based upon the pretreatment assignments by the insureds.

Farm Bureau also argues that the trial court erred by ruling that its antiassignment clauses in the policies issued to its insureds were unenforceable. The insureds' no-fault policies in this case all contained a clause stating that the insureds' "rights and duties under this policy may not be assigned without [Farm Bureau's] written consent." In an affidavit, a staff attorney for Farm Bureau averred that Farm Bureau did not consent to the insureds' assignment of their rights under the insurance policy to Bronson. Farm Bureau contends that its insureds' assignments to Bronson violated the antiassignment clause which negated Bronson's claims requiring summary disposition. We disagree.

Because we hold that the pretreatment registration release forms' assignments were void under MCL 500.3143, the issue regarding the enforceability of the antiassignment clauses respecting those assignments has been rendered moot. Nevertheless, whether Burgan's insurance policy's antiassignment clause prohibited his post-treatment assignment to Bronson must be addressed.

This Court recently decided this issue in *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 200; 920 NW2d 148 (2018).[2] This Court concluded that an antiassignment clause is unenforceable to prohibit the assignment of an accrued claim because such a prohibition on assignments violates public policy as set forth in Michigan's common law. In reaching this conclusion, this Court explained:

> Our Supreme Court in *Roger Williams* essentially held that an accrued cause of action may be freely assigned after the loss and that an antiassignment clause is not enforceable to restrict such an assignment because such a clause violates public policy in that situation. In this case, [the insured] had an accrued claim against his insurer for payment of healthcare services that had already been provided by plaintiffs before [the insured] executed the assignment. Under *Roger Williams*, the contractual prohibition against [the insured] assigning that claim to plaintiffs was unenforceable because it was against public policy.
>
> Therefore, we conclude that the antiassignment clause in the instant case is unenforceable to prohibit the assignment that occurred here—an assignment after the loss occurred of an accrued claim to payment—because such a prohibition of assignment violates Michigan public policy that is part of our common law as set forth by our Supreme Court. [*Shah*, 324 Mich App at 200 (citations omitted).]

As a published decision of this Court, *Shah* is binding precedent, MCR 7.215(C)(2), (J)(1); and adhering to *Shah*, the antiassignment clauses in Farm Bureau's policy are unenforceable to prevent assignment of an accrued cause of action after loss occurs because such a clause is contrary to public policy. See *id*. Thus, under *Shah*, Burgan's post-treatment assignment to Bronson is enforceable and Farm Bureau's contractual prohibition was unenforceable.

Nevertheless, Farm Bureau argues that *Shah* should not be followed because *Roger Williams* is no longer good law as a result of the repeal of a statute in effect when our Supreme Court decided *Roger Williams*. Farm Bureau asserts that *Shah* failed to address the effect the

---

[2] Our Supreme Court has scheduled oral argument on whether to grant the appellant insurer's application for leave, directing the parties to address "whether the anti-assignment clause in the defendant's insurance policy precludes the defendant's insured from assigning his right to recover no-fault personal protection insurance benefits to the plaintiff healthcare providers." *Shah v State Farm Mut Auto Ins Co*, 503 Mich 882; 918 NW2d 528 (2018). Although the Supreme Court has ordered arguments on this issue, this does not diminish the precedential effect of this Court's published decision in *Shah*. See MCR 7.215(C)(2).

repeal of this statute had on the continued validity of *Roger Williams*, and that this Court has no obligation to follow *Shah*. This argument lacks merit.

First, the *Shah* Court addressed *Roger Williams*'s continued validity, explaining:

> [D]efendant takes issue with the continued validity of our Supreme Court's holding in *Roger Williams* and its application in the instant case. However, as our Supreme Court has instructed, we are bound to follow its decisions "except where those decisions have *clearly* been overruled or superseded." There is no indication that *Roger Williams* or its holding relating to antiassignment clauses has been clearly overruled or superseded. Therefore, if the continued validity of *Roger Williams* is to be called into question, it will have to be by our Supreme Court. [*Shah*, 324 Mich App at 201 (citation omitted).]

Second, and more substantively, *Shah*'s analysis aptly demonstrates the flaw in Farm Bureau's underlying contention that this Court should disregard *Roger Williams*. In particular, *Roger Williams* is a decision of the Michigan Supreme Court, and this Court is bound to follow decisions of the Michigan Supreme Court "except where those decisions have *clearly* been overruled or superseded." *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016). Indeed, this Court "is not authorized to anticipatorily ignore [Michigan Supreme Court] decisions where it determines that the foundations of a Supreme Court decision have been undermined." *Id*. at 191-192 (emphasis omitted). Instead, "[i]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until [the Supreme] Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *Lakin v Rund*, 318 Mich App 127, 137-138; 896 NW2d 76 (2016) (quotation marks and citations omitted).

In this case, while Farm Bureau discusses developments in the law of assignments, and in particular the repeal of a statute in effect when *Roger Williams* was decided, at most, these developments could potentially affect the foundation for *Roger Williams*'s public policy determination regarding antiassignment clauses. But there is no indication that *Roger Williams* has been overruled or superseded, *Shah*, 324 Mich App at 201, and until such time as the Michigan Supreme Court determines *Roger Williams* is obsolete, this Court is bound to follow it. *Associated Builders*, 499 Mich at 191-192; *Lakin*, 318 Mich App at 137-138.

Therefore, under *Shah*, Farm Bureau's antiassignment clause did not preclude Burgan from assigning his accrued cause of action. Accordingly, the trial court did not err by denying Farm Bureau's motion for summary disposition on this basis.

Farm Bureau also argues that the trial court erred by denying it summary disposition of Bronson's alternative claim in Count II in which Bronson alleged that the registration release forms executed by the insureds made Bronson their designated representative and authorized it to pursue claims against Farm Bureau. Farm Bureau contends that Bronson lacked real-party-in-interest status and could not assert claims against it as an authorized representative of the insureds under the terms of the registration release forms. We agree.

Legal actions must be prosecuted in the name of the real party in interest. *Rohde v Ann Arbor Pub Sch*, 265 Mich App 702, 705; 698 NW2d 402 (2005), citing MCL 600.2041. "A real party in interest is one who is vested with a right of action in a given claim, although the beneficial interest may be with another." *Id*. "The real-party-in-interest rule requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim asserted. . . ." *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013) (quotation marks and citation omitted). This rule "is essentially a prudential limitation on a litigant's ability to raise the legal rights of another." *Id*. at 355. MCL 600.2041 provides in relevant part:

> Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action was brought

Likewise, in relevant part, MCR 2.201 states:

> (B) Real Party in Interest. An action must be prosecuted in the name of the real party in interest, subject to the following provisions:

> (1) A personal representative, guardian, conservator, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.

Bronson relies on general agency principles for the proposition that it could stand in the shoes of the insureds and prosecute their claims against Farm Bureau. Bronson argues that the registration release forms made it the insureds' agent and granted it real-party-in-interest status enabling it to pursue the insureds' claims for PIP benefits. A close reading of the registration release forms, however, does not support Bronson's contention. Nowhere in the form's contents are any provisions that expressly or impliedly designate Bronson as the signatories' agent for any purpose. The assignment of rights provision provides for the absolute assignment of all of the signatories' rights to pursue payment by Bronson for its recovery of payment of its bills. That provision does not designate Bronson as the signatories' agent to pursue payment for the patients who sign the document. The plain language of the document does not delegate authority to Bronson to act on the patient's behalf. Accordingly, Bronson's agency basis for its claim of real-party-in-interest status lacks merit.

Even if we were to consider the registration release forms as authorizations of Bronson to act as the insureds' agent, Bronson still fails to recognize the distinction between acting as an agent on behalf of the insureds—i.e., filing suit on behalf of the insureds in the insureds' names—and attempting to litigate a claim for PIP benefits in Bronson's own name. Although a duly authorized agent may file suit in the principle's names, an agent cannot file suit *in its own name*. See generally, *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 221-223; 880 NW2d 793 (2015).

The general rule provides that the claim must "be prosecuted by the party who by the substantive law in question owns the claim asserted. . . ." *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356. MCL 600.2041 and MCR 2.201(B)(1) provide limited exceptions to this rule, but these provisions do not aid Bronson's position. The specifically designated persons, personal representatives, executors, administrators, guardians, trustees, conservators, or parties authorized by statute, may sue in his or her own name without joining the party for whose benefit the action was brought. See MCL 600.2041; MCR 2.201(B)(1).[3] Bronson does not argue that it filed suit for the insureds' benefit in any of these specific capacities. Suit may also be brought by a party with whom or in whose name a contract has been made "for the benefit of another" without joining the party for whose benefit the action was brought. See MCL 600.2041; MCR 2.201(B)(1). But Bronson does not claim third-party-beneficiary status under any contract nor could it respecting the insurance policies in this case. Ultimately, in the absence of a valid assignment, Bronson does not own a cause of action for PIP benefits, see *Covenant*, 500 Mich at 217 & n 39, n 40, and none of the circumstances identified in MCL 600.2041 and MCR 2.201(B)(1) apply to allow Bronson to bring suit in its own name as it did in this case. Accordingly, Bronson is not a real party in interest under MCL 600.2041 and MCR 2.201(B)(1). Therefore, the trial court erred by denying Farm Bureau's motion for summary disposition regarding Count II. Nevertheless, as previously explained, Burgan executed a valid assignment of benefits to Bronson, and therefore, Bronson's claims relating to Burgan under that assignment are viable.

Farm Bureau also argues that the trial court erred by not dismissing Bronson's claim for declaratory relief and a judgment that Farm Bureau owes it PIP benefits. Farm Bureau asserts that *Covenant* clarified that Bronson has no direct claim against Farm Bureau for recovery, and as a third party to the insurance contracts in this case, Bronson lacks entitlement to a declaratory judgment. We agree.

A court's power to enter declaratory judgment is set forth in MCR 2.605(A)(1), which states: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." "The language of MCR 2.605 is permissive rather than mandatory; thus, it rests with the sound discretion of the court whether to grant declaratory relief." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 126; 715 NW2d 398 (2006). However, "the existence of an actual controversy is a condition precedent to the invocation of declaratory relief." *Id*. at 127 (quotation marks and citation omitted).

"Generally, an actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Citizens for*

---

[3] See also *Shenkman v Bragman*, 261 Mich App 412, 416; 682 NW2d 516 (2004) (recognizing that the individuals named in the court rule, such as a personal representative, may file suit in his or her name, but that the personal representative is a separate entity from the estate, and the estate, not the personal representative, remains the real party in interest).

*Common Sense in Gov't v Attorney Gen*, 243 Mich App 43, 55; 620 NW2d 546 (2000). In other words, "declaratory relief is designed to give litigants access to courts to preliminarily determine their rights." *Detroit v State*, 262 Mich App 542, 550-551; 686 NW2d 514 (2004).

> Declaratory judgment has been heralded as one of the most significant procedural reforms of the century. Its purpose is to enable parties, in appropriate circumstances of actual controversy, to obtain an adjudication of their rights before actual injury occurs, to settle matters before they ripen into violations of law or a breach of contractual duty, to avoid a multiplicity of actions by affording a remedy for declaring in one expedient action the rights and obligation of all litigants, or to avoid the strictures associated with obtaining coercive relief, when coercive relief is neither desired nor necessary to resolve the matter. [*Lansing Sch Ed Ass'n*, 293 Mich App at 515-516 (quotation marks and citation omitted).]

Notably, however, "MCR 2.605 does not limit or expand the subject-matter jurisdiction of the courts, but instead incorporates the doctrines of standing, ripeness, and mootness." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012).

In this case, absent a valid assignment, Bronson lacks an independent right to PIP benefits, *Covenant*, 500 Mich at 195-196, 216-217 & n 40; and in the absence of valid assignments, an action by a healthcare provider regarding coverage for PIP benefits is not an appropriate case for declaratory judgment, particularly when the insured individuals are not parties to the action. In *Covenant*, our Supreme Court rejected the conclusion that healthcare providers have standing to raise direct claims for PIP benefits. See *id*. at 195-195. The law of declaratory judgments incorporates the doctrine of standing, *UAW*, 295 Mich App at 495, and therefore, Bronson lacks standing to sue Farm Bureau in relation to the insurance policies between the insurer and the insureds for the matter at bar. Bronson's legal right to recover payment from its patients does not create an actual controversy between itself and Farm Bureau that permits it to pursue a declaratory judgment on claims for PIP benefits which it personally does not possess. See *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 624-625; 873 NW2d 783 (2015).

Specifically, Bronson is not a party to the contracts between Farm Bureau and the insureds, and Bronson has no legal rights under the insurance contracts requiring preliminarily determination. See *Detroit*, 262 Mich App at 550-551. Rather, Bronson's legal rights are governed by its relationship with its patients and it has recourse against them for its reasonable charges. *Covenant*, 500 Mich at 217. Indeed, declaring Farm Bureau liable for PIP benefits owed to the injured persons will not resolve the rights and obligation of all interested parties; to the contrary, the injured persons—whose rights are perhaps most affected—have not been joined to the action, making it doubtful that declaratory judgment is appropriate. See *Lansing Sch Ed Ass'n*, 293 Mich App at 516-517 ("Our Supreme Court has long recognized the necessity of having all interested parties before it in order to have a case that is appropriate for declaratory judgment."). Therefore, the trial court erred by denying summary disposition to Farm Bureau respecting Bronson's claim for declaratory judgment because, in the absence of valid assignments from the insureds, no actual controversy exists between Farm Bureau and Bronson.

Affirmed in part, respecting Bronson's claims related to Burgan's PIP benefits pursuant to Burgan's valid, post-treatment assignment. In all other respects, we reverse the trial court's denial of Farm Bureau's motion for summary disposition and remand for entry of judgment in favor of Farm Bureau respecting Bronson's claims based on the pretreatment assignments. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ James Robert Redford