YOUNG, C.J.
Plaintiff appeals by leave the Court of Appeals’ opinion in Associated Builders & Contractors v City of Lansing.[1] Plaintiff claims that the city of Lansing’s Ordinance 206.18(a) is unconstitutional under this Court’s 1923 decision Attorney General ex rel Lennane v Detroit[2] and is an unlawful usurpation of state power. The Court of Appeals majority disagreed and ruled that subsequent changes to state law had caused Lennane to be “superseded.” The Court of Appeals erred by exceeding its powers for refusing to follow a decision from this Court that both applied and had not been overruled. Even so, we now take this opportunity to overrule Lennane because subsequent constitutional changes[3] have undercut its viability. We therefore vacate the Court of Appeals’ decision but affirm the result for the reasons stated below.
*181 FACTS AND PROCEDURAL HISTORY
Defendant, city of Lansing, enacted an ordinance requiring contractors working on city construction contracts to pay employees a prevailing wage. The ordinance states in relevant part:
No contract, agreement or other arrangement for construction on behalf of the City and involving mechanics and laborers, including truck drivers of the contractor and/or subcontractors, employed directly upon the site of the work, shall be approved and executed by the City unless the contractor and his or her subcontractors furnish proof and agree that such mechanics and laborers so employed shall receive at least the prevailing wages and fringe benefits for corresponding classes of mechanics and laborers, as determined by statistics compiled by the United States Department of Labor and related to the Greater Lansing area by such Department.[4]
Plaintiff, a trade association, filed suit against Lansing, arguing that the ordinance is unconstitutional because municipalities do not have the authority to adopt laws regulating the wages paid by third parties, even where the relevant work is done on municipal contracts paid for with municipal funds. Plaintiff relies primarily on this Court’s 1923 Lennane decision, which held that, under this state’s 1908 Constitution, the city of Detroit could not enact an essentially analogous ordinance and related city charter provision.[5] In response, defendant argued that the legal landscape, particularly the ratification of a new constitution in 1963, had changed so radically that Lennane was no longer relevant in determining the question at hand. The trial court granted summary disposition to plaintiff, ruling that Lennane made it clear that the regu *182 lation of wages was a matter of state, not municipal, concern under the Michigan Constitution[6] and the Home Rule Act,[7] though it did take note of Lennane’s “archaic nature.”
The Court of Appeals panel reversed the lower court in a published, split decision.[8] Although the panel majority stated that its opinion “neither overrule[s] Lennane nor deviate [s] from the rule of stare decisis,”[9] the majority nevertheless ruled that changes in the legal landscape had, in fact, rendered Lennane obsolete and inapplicable. The panel stated that “the founda *183 tion upon which Lennane stood has been rejected by our Supreme Court.”[10] One judge dissented, arguing that the majority was unlawfully striking down a decision by this Court because Lennane had never been overruled—either implicitly or explicitly—or rendered inapplicable. The dissenting opinion stated:
[T]he Court’s conclusion in Lennane that this is a matter of state concern has never been overruled. Therefore . .. defendant’s powers ... do not extend to this ordinance until and unless the Supreme Court revisits its conclusion in Lennane, or the Legislature explicitly grants cities the power to adopt prevailing wage ordinances.[11]
This appeal followed.
STANDARD OF REVIEW
This Court reviews de novo both questions of constitutional law and a trial court’s decision on a motion for summary disposition.[12]
ANALYSIS
We take this opportunity to overrule Lennane. Len-nane’s conception of municipal power may or may not have been well-grounded in Michigan’s 1908 Constitution and the legal landscape of the time, but it is certainly incongruent with the state of our law as reflected in our current Constitution. We therefore conclude that Lennane has no continuing viability in light of the adoption of our 1963 Constitution.
*184 The 1908 Constitution read in relevant part:
Under such general laws, the electors of each city and village shall have power to frame, adopt, and amend its charter,. .. and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state.[13]
Interpreting this constitutional provision, the Len-nane Court held that the regulation of wages paid to third-party employees working on municipal construction contracts was exclusively a matter of “state,” not “municipal,” concern.[14] Quoting liberally from a 1919 case, Kalamazoo v Titus,[15] the Lennane Court stated:
“The charter provision, the ordinance, the argument made for the city, indeed, the suit itself, reflect a popular interest in, and, we conceive, a popular misunderstanding about, the subject of home rule, so-called, in cities. There is apparent a widely spread notion that lately, in some way, cities have become possessed of greatly enlarged powers, the right to exercise which may come from mere assertion of their existence and the purpose to exercise them. Whether these powers are really inherent in the community, but their exercise formerly was restrained, or are derived from a new grant of power by the State, or may be properly ascribed to both inherent right and to a new grant, are questions which do not seem to bother very much the advocates of the doctrine that they in any event exist. On the other hand, there is expression of grave doubt whether, in the view of the law, there has been any *185 enlargement or extension of the subjects of municipal legislation and control or of the powers of cities except as those subjects and powers are specifically enumerated and designated in the Constitution itself and in the home rule act.” [16]
By quoting Titus at such length, the Lennane Court appears to have been posing itself a question: under the 1908 Constitution, what, exactly, are the default powers of municipalities? Do municipalities have all powers relating to local concerns that are not expressly denied, or can they wield only those powers expressly and explicitly granted? In concluding that a municipality’s powers did not include the power to enact laws regulating the wages paid to third-party employees working on municipal construction contracts, the Len-nane Court appears to have chosen the latter answer.
This conclusion finds no support in the 1963 Constitution. Article 7, § 22 of the 1963 Constitution provides:
Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this sectionl[17]-[1]
Explaining these highlighted changes, the Address to the People states:
*186 This is a revision of Sec. 21, Article VIII, of the present [1908] constitution and reflects Michigan’s successful experience with home rule. The new language is a more positive statement of municipal powers, giving home rule cities and villages full power over their own property and government, subject to this constitution and lawf[18]
The 1963 Constitution also contained a new provision, Article 7, § 34:
The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.[19]
If it was ever the case, we conclude that, given the newly added language that expresses the people’s will to give municipalities even greater latitude to conduct their business, there is simply no way to read our current constitutional provisions and reach the conclusion that “there is . . . grave doubt whether. . . there has been any enlargement or extension of the subjects of municipal legislation and control or of the powers of cities except as those subjects and powers are specifically enumerated and designated in the Constitution *187 itself and in the home rule act.”[20] Under our current Constitution, there is simply no room for doubt about the expanded scope of authority of Michigan’s cities and villages: “No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.”[21] Moreover, these powers over “municipal concerns, property and government” are to be “liberally construed.”[22] In contrast, the Lennane Court briefly interpreted the more limited language in the 1908 Constitution—granting cities and villages the right to “pass all laws and ordinances relating to its municipal concerns”—decided upon a narrow conception of local authority, and declared, with scant analysis, that a prevailing wage law similar to this one was exclusively a matter of “state concern.”
But the wages paid to employees of contractors working on municipal contracts have a self-evident relationship to “municipal concerns, property, and government” if those words are even reasonably, if not liberally, construed. Those wage rates concern how a municipality acts as a market participant, spending its own money on its own projects.[23] If a municipality has *188 broad powers over local concerns, it certainly has the power to set terms for the contracts it enters into with third parties for its own municipal projects—including provisions relating to the wages paid to third-party employees. This way, the municipality controls its own money and presumably expresses its citizens’ preference as to what those who work on public projects should be paid. We see nothing in these municipal aims that falls outside the ambit of Article 7, § 22 of the 1963 Constitution.[24]
Furthermore, Lennane’s holding appears to rest on an implicit dichotomy: if something is a matter of “state concern,” it cannot also be a matter of “local concern.”[25] But this binary understanding does not comport with the plain language of the 1963 Constitution, which grants cities and villages broad powers over “municipal concerns, property and government” whether those powers are enumerated or not. The relevant constitutional language does not state that a matter cannot be a “municipal concern” if the state might also have an interest in it.[26] While a binary *189 understanding of state and local governmental power might have been common 100 years ago,[27] the ratifiers of the 1963 Constitution do not appear to have worked under the same apprehension—instead, we are left with their words: “The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.”[28]
Thus, if Lennane’s holding was ever on firm constitutional ground, it no longer had sound footing after the people ratified the 1963 Constitution. We agree with the Court of Appeals majority that subsequent changes in the law have undercut Lennane’s foundations.[29] Accordingly, we conclude that “changes in the *190 law ... no longer justify the questioned decision.”[30] Nor do we believe that any reliance interests affected by this Court’s overruling Lennane caution against our analysis. Reliance interests, while important to the rule of stare decisis, must fall to the wayside when this Court is addressing actual changes in the text of our *191 constitutions. We therefore declare that Lennane has no continuing viability and repudiate its conception of municipal authority in light of the ratification of the 1963 Constitution. The rule in Lennane—that city and village governments may not enact ordinances or charter provisions governing the wages paid to third-party employees working on municipal construction contracts—is overruled.
Nonetheless, we also agree with Court of Appeals dissent’s following assessment of the binding nature of Lennane before the instant decision:
[T]he Court’s conclusion in Lennane that this is a matter of state concern has never been overruled. Therefore, even if we apply a “liberal construction” to defendant’s powers, they do not extend to this ordinance until and unless the Supreme Court revisits its conclusion in Lennane, or the Legislature explicitly grants cities the power to adopt prevailing wage ordinances.[31]
While it is inarguable that developments over the past century have undercut the foundation upon which Lennane stood, its holding was never explicitly superseded by the ratifiers of the 1963 Constitution or by the Legislature, nor was it overruled by this Court. The Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded[32] and is not authorized to *192 anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined.[33] Thus, while we agree with the result of the Court of Appeals’ decision, we disapprove of its usurpation of this Court’s role under our Constitution.
CONCLUSION
Lennane, whatever its merits when it was decided, has been undercut by the adoption of the 1963 Constitution. We therefore overrule Lennane. Under our Constitution, cities and villages may enact ordinances relating to “municipal concerns, property and government,” including ordinances and charter provisions regulating the wages paid to third-party employees working on municipal construction contracts, “subject to the constitution and law.”[34]
The Court of Appeals erred, however, by disregarding precedent from this Court that has not been clearly overruled by the Court or superseded by subsequent legislation or constitutional amendment. “[I]t is the Supreme Court’s obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts *193 are bound by that authority.”[35] Because of this error, we vacate the Court of Appeals’ decision but affirm the result, for the reasons stated above.
Markman, McCormack, Viviano, Bernstein, and Larsen, JJ., concurred with YOUNG, C.J.

 Associated. Builders & Contractors v City of Lansing, 305 Mich App 395; 853 NW2d 433 (2014).

 Attorney General ex rel Lennane v Detroit, 225 Mich 631; 196 NW 391 (1923).

 See Const 1963, art 7, §§ 22 and 34.

 Lansing Ordinances, § 206.18a.

 Lennane, 225 Mich at 641.

 Most relevant to our analysis, Article 7, § 22 of the 1963 Constitution provides:
Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.

 MCL 117.4j. We decide this case under the Michigan Constitution, but the similar text of the Home Rule Act informs our decision. In relevant part, the Act states:
Each city may in its charter provide:
[[Image here]]
For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state.

 Associated Builders, 305 Mich App at 398.

 Id. at 411.

 Id. It is because the panel below failed to give deference to the precedential authority of our opinions that we vacate the opinion of the Court of Appeals.

 Id. at 421 (SAWYER, P.J., dissenting).

 Dep’t of Transp v Tompkins, 481 Mich 184, 190; 749 NW2d 716 (2008).

 Const 1908, art 8, § 21.

 Lennane, 225 Mich at 638 (“The police power rests in the State.. .. While the municipality in the performance of certain of its functions acts as agent of the State it may not as such agent fix for the State its public policy. That power has not been delegated to these agents of the State. Unless delegated in some effective way the police power remains in the State.”).

 Kalamazoo v Titus, 208 Mich 252; 175 NW 480 (1919).

 Lennane, 225 Mich at 639, quoting Titus, 208 Mich at 260-261 (emphasis added; citation omitted).

 The new language added is italicized.

 2 Official Record, Constitutional Convention 1961, p 3393 (emphasis added).

 Const 1963, art 7, § 34. The Address to the People for this provision explains:
This is a new section intended to direct the courts to give a liberal or broad construction to statutes and constitutional provisions concerning all local governments. Home rule cities and villages already enjoy a broad construction of their powers and it is the intention here to extend to counties and townships within the powers granted to them equivalent latitude in the interpretation of the constitution and statutes. [2 Official Record, Constitutional Convention 1961, p 3395 (emphasis added).]

 Lennane, 225 Mich at 639.

 Const 1963, art 7, § 22.

 Const 1963, art 7, § 34.

 Merriam-Webster’s Collegiate Dictionary (11th ed) defines “municipal” as “of, relating to, or characteristic of a municipality,” which is “a primarily urban political unit having corporate status and usu. powers of self-government.” The same dictionary defines “property” as “something owned or possessed” and defines “government” as “the act or process of governing . . . authoritative direction or control.” All three of these definitions are broad enough to encompass the conditions a municipality places in its municipality-funded construction contracts, including conditions as to what contractors on those projects pay their workers. These contracts clearly “relate to” the municipality in that they are public projects; they concern a municipality's own money and *188 property, things that it clearly “owns or possesses”; and a municipality certainly has “authoritative direction or control” over its own public-works projects.

 Nothing in this opinion should be interpreted to imply that municipalities are sovereign entities with extraconstitutional powers or the ability to negate legislative action. See Const 1963, art 7, § 22 (“Each .. . city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law”) (emphasis added).

 It is somewhat difficult to parse this aspect of Lennane's holding, because the Lennane Court never explains precisely why the wages paid to third-party employees working on municipal construction contracts are matters of state concern.

 Indeed, in this very area of prevailing wages, the Legislature explicitly omits municipalities from its list of affected governmental “contracting agents” in the state prevailing wage statute, MCL 408.551(c). This drafting decision strongly suggests an independent *189 local role for setting wage rates on municipal contracts. At the very-least, there is no evidence that the Legislature intended to preempt municipal authority in this area.

 Along with Lennane, several older cases appear to adopt this binary conception of state and local governance. See, e.g., People ex rel Bd of Detroit Park Commissions v Detroit Common Council, 28 Mich 227, 240 (1873) (“Whoever insists upon the right of the State to interfere and control by cumpulsory [sic] legislation the action of the local constituency in matters exclusively of local concern, should be prepared to defend a like interference in the action of private corporations and of natural persons.”); Thomas v Wayne Co Bd of Supervisors, 214 Mich 72, 84; 182 NW 417 (1921) (“[Establishing and maintaining a tract index] is purely a matter of local concern. Neither the state as a whole nor any person other than a taxpayer of Wayne county [sic] has any interest in the matter.”). Since the passage of the 1963 Constitution, however, Michigan courts have not relied upon this archaic, binary conception of state and local power. See Airlines Parking, Inc v Wayne Co, 452 Mich 527, 539; 550 NW2d 490 (1996) (“[M]atters of local concern may also be matters of state concern.”). In the face of explicit textual direction to the contrary, we decline to impose such an anachronistic conception of state and local government on our current constitution.

 Const 1963, art 7, § 34.

 The Court of Appeals panel majority stated that “the foundation upon which Lennane stood has been rejected by our Supreme Court.” Associated Builders, 305 Mich App at 411. The panel majority relied on language from decisions of this Court, including Rental Prop Owners Ass’n of Kent Co v Grand Rapids, 455 Mich 246, 253-254; 566 NW2d 514 *190 (1997) (“Home rule cites have broad powers to enact ordinances for the benefit of municipal concerns under the Michigan Constitution .... The home rule cities act is intended to give cities a large measure of home rule. It grants general rights and powers subject to enumerated restrictions.”) (citations omitted), Detroit v Walker, 445 Mich 682, 690; 520 NW2d 135 (1994) (“[I]t is clear that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied. Home rule cities are empowered to form for themselves a plan of government suited to their unique needs and, upon local matters, exercise the treasured right of self-governance.”) (citation omitted), and AFSCME v Detroit, 468 Mich 388, 410; 662 NW2d 695 (2003), quoting Walker, 445 Mich at 690 (“We have held that ‘home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied.’ ”). While all of these cases use clear language acknowledging the broad grants of municipal authority in the 1963 Constitution and the Home Rule Act, none of them relate directly to the problem at issue in this case or purport to overrule Lennane. These cases support the point made by the panel. However, rather than rely primarily on the gloss in some of our past cases, we take this opportunity to overrule Lennane anchoring our decision on the text of the 1963 Constitution itself.

 Robinson v Detroit, 462 Mich 439, 464; 613 NW2d 307 (2000). While the “first inquiry” in considering whether to overrule a prior decision of this Court is generally whether that prior decision was wrongly decided, Sington v Chrysler Corp, 467 Mich 144, 162; 648 NW2d 624 (2002), in cases such as this where the legal landscape has changed dramatically, it adds little to the inquiry to determine whether the prior decision was correctly decided under obsolete law. See Robinson, 462 Mich at 455 (concluding that Fiser v Ann Arbor, 417 Mich 461; 339 NW2d 413 (1983), “may have been proper when decided, but it is no longer ‘good law’ after Ross [v Consumers Power Co (On Rehearing), 420 Mich 567; 363 NW2d 641 (1984)]”). We note, however, that Lennane offered precious little textual analysis for its conclusion, so to the extent that the phrase “municipal concerns” remains unchanged between the 1908 and 1963 Constitutions, Lennane’s analysis of that term is not particularly illuminating.

 Associated Builders, 305 Mich App at 421 (Sawyer, P.J., dissenting).

 Although one can determine with relative ease whether a case was overruled by this Court, we acknowledge that it is not always so easy to determine whether a case has been “clearly overruled or superseded” by intervening changes in the positive law. At one end of the spectrum are situations in which the Legislature has entirely repealed or amended a statute to expressly repudiate a court decision. In such situations, lower courts have the power to make decisions without being bound by prior cases that were decided under the now-repudiated previous positive law. The other end of the spectrum is harder to define; however, as it relates *192 to this case, because both the 1908 Constitution and the 1963 Constitution contain the phrase at issue in Lennane—“relating to its municipal concerns”—Lennane had not been clearly superseded, and the Court of Appeals was bound by it.

 “While the Court of Appeals may properly express its belief that a decision of this Court was wrongly decided or is no longer viable, that conclusion does not excuse the Court of Appeals from applying the decision to the case before it.” Boyd v W G Wade Shows, 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds by Karaczewski v Farbman Stein & Co, 478 Mich 28; 732 NW2d 56 (2007), itself overruled in part by Bezeau v Palace Sports & Entertainment, Inc, 487 Mich 455; 795 NW2d 797 (2010).

 Const 1963, art 7, § 22.

 Boyd, 443 Mich at 523.

 Const 1908, art 8, § 20.