*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

HORACE SHEFFIELD III and RODRICK
HARBIN,

        Plaintiffs-Appellees,

v

DETROIT CITY CLERK and DETROIT
ELECTION COMMISSION,

        Defendants,

and

DETROIT CHARTER REVISION COMMISSION,

        Intervening Defendant-Appellant.

FOR PUBLICATION
June 3, 2021

No. 357298
Wayne Circuit Court
LC No. 21-006043-AW

---

ALLEN A. LEWIS and INGRID D. WHITE,

        Plaintiffs-Appellees,

v

DETROIT CITY CLERK and DETROIT
ELECTION COMMISSION,

        Defendants,

and

DETROIT CHARTER REVISION COMMISSION,

        Intervening Defendant-Appellant.

No. 357299
Wayne Circuit Court
LC No. 21-006040-AW

-1-

Before:  CAMERON, P.J., and FORT HOOD and LETICA, JJ.

FORT HOOD, J (*dissenting*).

I take no issue with sections IV through VI of the majority's opinion.  However, because I believe the Detroit Charter Revision Commission (DCRC) has the authority to place Proposal P on the ballots—and voters have the right to consider it—I respectfully dissent.

I first note that our Constitution grants considerable authority to cities to frame and amend their operative charters:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village.  Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law.  No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.  [Const 1963, art 7, § 22.]

Our constitution further provides:

> The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.  Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.  [Const 1963, art 7, § 34.]

Pursuant to the plain language of the text, cities have "broad powers over 'municipal concerns, property and government' whether those powers are enumerated or not." *Associated Builders & Contractors v Lansing*, 499 Mich 177; 880 NW2d 765 (2016).

I take no issue with the majority's interpretation of the "general laws" and "subject to the constitution and law" provisions of § 22.  These provisions clearly indicate that the authority of a city to revise or amend its charter may be constrained to some extent by statute, including statutes such as the Home Rule City Act (HRCA), MCL 117.1a *et seq*.  However, I do not read DCRC's argument as suggesting otherwise; rather, DCRC argues that although a city's authority may be constrained, the HRCA does not constrain it in the manner plaintiffs have suggested in this case.  I agree with that position.

The HRCA provides that a city may initiate the process of revising its charter either by a 3/5 vote of its legislative body or by an initiatory petition.  MCL 117.18.  I note that Detroit voters approved a general charter revision and elected members to DCRC in 2018.  MCL 117.21 provides

a similar process where cities seek to *amend* their active charter.[1] Primarily at issue in this case is MCL 117.22, entitled "Charter amendments; transmittal to governor; approval or disapproval, reconsideration by legislative body," which provides:

> Every amendment to a city charter whether passed pursuant to the provisions of this act or heretofore granted or passed by the state legislature for the government of such city, before its submission to the electors, and every charter before the final adjournment of the commission, shall be transmitted to the governor of the state. If he shall approve it, he shall sign it; if not, he shall return the charter to the commission and the amendment to the legislative body of the city, with his objections thereto, which shall be spread at large on the journal of the body receiving them, and if it be an amendment proposed by the legislative body, such body shall re-consider it, and if 2/3 of the members-elect agree to pass it, it shall be submitted to the electors. If it be an amendment proposed by initiatory petition, it shall be submitted to the electors notwithstanding such objections.

Notably absent from this statute is any reference to charter revisions other than the fact that charters should be transmitted to the Governor "before the final adjournment of the commission." MCL 117.22.[2] There is no statute in the HRCA indicating what effect or subsequent process may be initiated where the Governor declines to approve a charter revision rather than an amendment.

With that in mind, I am inclined to agree with DCRC that nothing in the HRCA purports to say that approval by the Governor is prerequisite to voters having the opportunity to approve or disapprove of a charter revision.[3] See *Associated Builders*, 499 Mich at 189 n 29 (indicating that home rule cities enjoy powers specifically granted to them and "may also exercise all powers not expressly denied") (quotation marks and citation omitted). See also *Warren City Council v Buffa*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 354663); slip op at 4-5 (noting that "MCL 117.22 concerns only a narrow category, proposed amendments to city charters," and "[t]his Court cannot impose additional requirements in . . . MCL 117.22 . . . that were not placed there by the Legislature"); *Esurance Prop & Cas Ins Co v Michigan Assigned Claims Plan*, 330 Mich App 584, 591; 950 NW2d 528 (2019) (indicating where things are expressed by statute as members of an associated group, courts should infer that things otherwise excluded from the group were excluded by deliberate choice rather than inadvertence). Because the HRCA is silent as to the effect and operation of the Governor's failure to approve a charter revision, I do not think it

---

[1] The differences between revising and amending a charter are undisputed in this case. And, although the majority opines about the result of this case were the issue to be considered a charter amendment, I think it safe to say that all parties agree that this case involves a charter revision.

[2] In *Warren City Council v Buffa*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 354663); slip op at 4, we noted that "MCL 117.22 relates solely to the procedure for *amending* a city charter, and more specifically, to a particular procedure that is one part of the process.") (emphasis added).

[3] As DCRC notes, although the Governor declined to take a position on the matter in her letters to DCRC, this was also the conclusion of the Attorney General after reviewing DCRC's proposed charter.

appropriate that we read MCL 117.22 as creating a veto power in the Governor that is not more explicitly prescribed. See *Lakeshore Group v Dep't of Environmental Quality*, ___ Mich ___, ___; ___ NW2d ___ (Docket Nos. 159524 and 159525); slip op at 12 ("Courts can't add requirements to the text of the statute."); *Mich Ambulatory Surgical Ctr v Farm Bureau Gen Ins Co of Mich*, __ Mich __, ___; __ NW2d __ (2020) (Docket No. 349706); slip op at 5 (indicating that the *casus omissus pro omisso habendus est* canon of construction provides that "nothing is to be added to what the text states or reasonably implies," "which prohibits courts from supplying provisions omitted by the Legislature"); *Pike v Northern Mich Univ*, 327 Mich App 683; 696-978; 935 NW2d 86 (2019) ("A court must not judicially legislate by adding into a statute provisions that the Legislature did not include.") (quotation marks and citation omitted); *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 451; 770 NW2d 117 (2009) (refusing to interpret the Legislature's silence as creating a mayoral veto power over the city council's resolution).

I understand that it is the majority's position that it is DCRC and not plaintiffs who would have us read words into the HRCA that are not there. The majority notes that "[t]he Legislature has made no provision for the revised charter to be submitted to the voters over the Governor's express rejection, and this Court will not create such a provision where it cannot reasonably be inferred from the statutory language." However, I would put forth that the Legislature has made no provision suggesting that the Governor's rejection of a revision may impact whether the revision may be placed on a ballot in the first instance. MCL 117.22, which undoubtedly focuses on amendments, says only the following about the process after a revision or amendment is transmitted to the Governor:

> If he shall approve it, he shall sign it; if not, he shall return the charter to the commission and the amendment to the legislative body of the city, with his objections thereto, which shall be spread at large on the journal of the body receiving them, and *if it be an amendment* proposed by the legislative body, such body shall re-consider it, and if 2/3 of the members-elect agree to pass it, it shall be submitted to the electors. [Emphasis added.]

There is simply nothing in the HRCA indicating that the commission must reconsider and decline to submit charter *revisions* to electors that the Governor has not approved.[4]

I further note that the majority and trial court indicate that DCRC's interpretation of MCL 117.22 would render transmission of proposed revisions to the Governor an "empty and useless gesture." I agree with DCRC that portions of the statute are not rendered nugatory by our application of the plain language. There remains value in working with the Governor on charter revisions, but more importantly, while we strive to give affect to all statutory language and we

---

[4] As an aside, it is worth noting that amendments initiated by petition need not be approved by the Governor to be submitted to electors. MCL 117.22. Applying plaintiffs' logic that what expressly applies to amendments from MCL 117.22 also implicitly applies to revisions, any revision initiated by petition clearly would not be subject to preapproval by the Governor prior to submission to electors. Here, however, I note that the 2018 ballot question was posed by operation of the current charter and neither a legislative action nor an initiatory petition. Detroit Charter tit IX, ch IV, § 9-403.

presume that the Legislature did not intend to do a useless thing, *People v Cunningham*, 496 Mich 145, 157; 852 NW2d 118 (2014), we also simply cannot read words into a statute that are not there, *Lakeshore Group*, ___ Mich at ___; slip op at 12.  See also *Byker v Mannes*, 465 Mich 637, 646-647; 641 NW2d 210 (2002) ("It is a well-established rule of statutory construction that this Court will not read words into a statute.").  Again, MCL 117.22 explicitly provides that amendments proposed by a legislative body and not approved by the Governor must be reconsidered.  The statute contains no corollary provision with respect to revisions.

Finally, while I do not take issue with the majority's conclusion that permitting DCRC to continually revise the charter up to August 6, 2021 could pose problems where absentee voters vote on an earlier version of the revision, I think it can be implied from DCRC's brief on appeal that it understands that issue.  I find the distinction laid out by DCRC between the ballot wording and the revised charter itself to be apt, and I am less confident than the majority that the final revised charter would be untimely were it not completed contemporaneously with the May 11, 2021 deadline for the proposed ballot language.  MCL 168.646a(2) provides the deadline for the certification of the wording of the ballot question.  MCL 117.23 provides that the DCRC must finalize the revised charter "before submission to the electors."  I would not conclude that certifying the ballot language was the equivalent of submission of the issue to voters for the purposes of MCL 117.23, and would be more inclined to agree with DCRC that the issue is submitted to voters when they are given the opportunity to consider it, i.e., when ballots become available on June 19, 2021.  That having been said, I believe the central dispositive issue in this case is our interpretation of MCL 117.22, and I proffer my opinion as to the timing issue only to the extent that it might be implied from the trial court's opinion that it was pertinent to the relief that was granted.

With all of the above in mind, I respectfully dissent from the majority's conclusion that the HRCA prevents DCRC from submitting their proposed charter revision to electors.  Keeping in mind that we construe the constitutional provisions broadly in favor of the commission, I would decline to read the HRCA as creating an unspoken obligation on the part of the commission that limits their constitutional authority.  I would conclude that Proposal P should remain on the ballot and voters should have the opportunity to consider it.

/s/ Karen M. Fort Hood