*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT TAYLOR,

        Defendant-Appellant.

UNPUBLISHED
March 9, 2023

No. 325834
Macomb Circuit Court
LC No. 2009-005243-FC

## ON REMAND

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

On remand from our Supreme Court, we are tasked with determining whether defendant's sentence to life in prison without the possibility of parole (LWOP) violated the Eighth Amendment and Const 1963, art 1, § 16, because he was convicted of first-degree felony murder, MCL 750.316(1)(b), merely on an aiding-and-abetting theory and not as a principal. On the basis of controlling state and federal precedent and given that one of several factors to consider when sentencing an individual for first-degree murder committed as a minor is "the circumstances of the homicide offense, including the extent of [the minor's] participation in the conduct," *Miller v Alabama*, 567 US 460, 477; 132 S Ct 2455; 183 NW2d 407 (2012), we hold that there is no categorical bar to imposing an LWOP sentence even though defendant was convicted as an aider and abettor. We therefore remand the case to the trial court for resentencing consistent with this opinion and the directives set forth by the Michigan Supreme Court in *People v Taylor*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 154994).[1]

---

[1] Even though we have used the terms "minor" and "juvenile," we acknowledge that our Supreme Court has now held that 18-year-olds cannot automatically be sentenced to LWOP. In *People v Parks*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 162086); slip op at 35, the Supreme Court ruled that "mandatorily subjecting 18-year-old defendants convicted of first-degree murder to a

I. BACKGROUND

The Supreme Court in *Taylor*, ___ Mich at ___; slip op at 2-5, set forth the factual and procedural background of the case, stating:

There is no denying that the facts of this case are heinous. The victim, Matt Landry, was brazenly abducted in broad daylight from outside an Eastpointe sandwich shop by defendant, Robert Taylor, and codefendant, Ihab Masalmani. Armed with a gun, defendant, who was 16 years old at the time, acted as a lookout while 17-year-old Masalmani forced Landry into Landry's own car; the two then drove Landry away at gunpoint. The pair held Landry captive over the next several hours, drove his vehicle around, and stole money from his bank account. Eventually, while continuing to hold Landry captive, the pair made their way into the city of Detroit to purchase crack cocaine. The victim was last seen alive inside a vacant drug house. A few days later, Landry's body was discovered inside a burned-out house in Detroit. He had been shot in the back of the head, execution style.

Defendant and Masalmani were arrested and tried before separate juries in connection with these criminal actions. The prosecutor's theory at trial was that defendant aided and abetted Masalmani. Following trial, a jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b); carjacking, MCL 750.529a; conspiracy to commit carjacking, MCL 750.529a and MCL 750.157a; kidnapping, MCL 750.349; conspiracy to commit kidnapping, MCL 750.349 and MCL 750.157a; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant received the mandatory sentence of LWOP for his first-degree murder conviction. On appeal, the Court of Appeals affirmed in an unpublished per curiam opinion. However, in light of the then recent United States Supreme Court case [in] *Miller* . . ., which struck down mandatory LWOP sentences for juveniles, the Court of Appeals vacated his sentence and remanded for resentencing.

As will be discussed in greater detail, in response to *Miller*, the Michigan Legislature enacted MCL 769.25. In accordance with that statute, the prosecutor moved to have defendant sentenced to LWOP. MCL 769.25(2). As required by MCL 769.25(6), the trial court held a *Miller* hearing over the course of two days in October 2014. The trial court heard testimony from Kathleen Schaefer, a licensed professional counselor and associate professor qualified as an expert in parole and probation. Schaefer had met with defendant in prison and expressed a belief that

___

sentence of life without parole violates the principle of proportionality derived from the Michigan Constitution, and thus constitutes unconstitutionally cruel punishment under Const 1963, art 1, § 16[,]" rendering "Parks's automatic sentence of life without parole unconstitutional." We note that in *Parks*, the "prosecution charged [the defendant] with first-degree premeditated murder under an aiding-and-abetting theory." *Id.* at ___; slip op at 2.

defendant was capable of change and rehabilitation, although she admitted there was no predictive "test" that could indicate whether a person was capable of rehabilitation or not. The parties also stipulated to the admission of the report and testimony of Dr. Daniel Keating, a professor of psychology, psychiatry, and pediatrics, who was qualified as an expert in cognitive brain development in adolescents. Keating's testimony concerned scientific generalizations surrounding adolescent brain development. Following the hearing, the trial court took the matter under advisement.

On January 6, 2015, the trial court issued an order and opinion sentencing defendant to LWOP. In its opinion, the trial court went through each *Miller* factor and determined that LWOP was an appropriate sentence, characterizing defendant as a rare juvenile offender whose crime reflects irreparable corruption. Defendant again sought leave to appeal, and the Court of Appeals again affirmed in an unpublished per curiam opinion. *People v Taylor*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2016 (Docket No. 325834). Defendant sought leave to appeal in this Court, and the application was held in abeyance multiple times while this Court and the United States Supreme Court continued to refine the contours of juvenile LWOP sentencing jurisprudence. After the resolution of those cases, this Court ordered oral argument on the application in defendant's case . . . . [Quotation marks and citations omitted.]

Ultimately, our Supreme Court held "that, as the moving party at a *Miller* hearing, the prosecutor bears the burden to rebut a presumption that LWOP is a disproportionate sentence[, and] [t]he standard for rebuttal is clear and convincing evidence." *Taylor*, ___ Mich at ___; slip op at 1-2. The Court ruled that defendant was entitled to resentencing because the trial court had not operated within the correct legal framework. *Id.* at ___; slip op at 2.[2] But the Court then added the following caveat: "Because the Court of Appeals failed to address a separate constitutional issue that could be dispositive, . . . we remand this case to the Court of Appeals to consider that issue in the first instance before any resentencing can take place." *Id.* The Supreme Court explained:

---

[2] The *Taylor* Court explained:

Accordingly, we hold that MCL 769.25 expressly requires that the prosecutor play the role of moving party and that, therefore, the prosecutor bears the burden of proof at a *Miller* hearing. That burden is to rebut a presumption that the particular juvenile defendant is not deserving of LWOP. If the prosecutor cannot shoulder this burden by clear and convincing evidence, the trial court must sentence the defendant to a term of years. With this guidance on practice and procedure, it is our sincere hope that Michigan's discretionary sentencing scheme, MCL 769.25, can live up to the Supreme Court's philosophy that a discretionary sentencing procedure will ensure that juvenile LWOP remains relatively rare. [*Taylor*, ___ Mich at ___; slip op at 19-20.]

Before the trial court can implement these procedures, however, the Court of Appeals must address an issue raised by defendant in his appeal of right. In his Court of Appeals brief, defendant argued that his LWOP sentence violates the Eighth Amendment and Const 1963, art 1, § 16 because he was convicted of felony murder as an aider and abettor. The panel failed to address this issue, so we remand to that Court for consideration of defendant's argument. We do not retain jurisdiction. [*Id.* at ___; slip op at 20.]

## II. ANALYSIS

### A. STANDARD OF REVIEW

"Whether a defendant's sentence constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution or Article 1, § 16 of the Michigan Constitution are questions of constitutional law that we review de novo." *People v Stovall*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162425); slip op at 6. This Court reviews the constitutional provisions independently and absent any deference to the trial court. *Id.*

### B. CONSTITUTIONAL PROVISIONS AND PROPORTIONAL SENTENCING

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments[.]" And under Const 1963, art 1, § 16, "cruel or unusual punishment shall not be inflicted." The provision in the Michigan Constitution "is broader than the federal Eighth Amendment counterpart." *People v Parks*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 162086); slip op at 10. "[U]nusually excessive imprisonment is forbidden by Article 1, § 16 of the Michigan Constitution. *Id.* Accordingly, "in addition to those protections guaranteed to every citizen of this country under the Eighth Amendment of the federal Constitution, our state Constitution has historically afforded greater bulwarks against barbaric and inhumane punishments." *Id.* at ___; slip op at 12. "[O]ur Constitution requires that sentencing decisions be proportional." *Id.* at ___; slip op at 10. The Supreme Court explained:

> [I]n evaluating the proportionality of sentences under the "cruel or unusual punishment" clause, [Michigan courts] are required to consider: (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation . . . ." [*Id.* at ___; slip op at 11 (citations omitted)].

We note that our Supreme Court recently held in *Stovall*, ___ Mich at ___; slip op at 15, "that a parolable life sentence for a defendant who commits second-degree murder while a juvenile violates Article 1, § 16 of the Michigan Constitution[.]" We shall more fully explore *Stovall* later in this opinion.

### C. AIDING AND ABETTING IN GENERAL

In Michigan, aiding and abetting is governed by statute, MCL 767.39, which provides as follows:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

"The purpose of the aiding and abetting statute is to abolish the common law distinction between accessories before the fact and principals so that one who counsels, aids or abets in the commission of an offense may be tried and convicted as if he had directly committed the offense." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004) (quotation marks and citations omitted). Aiding or abetting describes any type of assistance that is given to the perpetrator of a crime through words or deeds that are intended to encourage, support, or incite the commission of the offense by the perpetrator. *Id.* An aider and abettor actively encourages another to commit a crime, or by his or her conduct makes clear of a readiness to assist the perpetrator if assistance becomes necessary. *Id.* The *Moore* Court stated:

> The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*Id.* at 67-68 (quotation marks and citation omitted; alteration in original).]

With respect to the "intent" element of aiding and abetting, the Supreme Court in *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006), observed:

> We hold that a defendant must possess the criminal intent to aid, abet, procure, or counsel the commission of an offense. A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense.

## D. OFFENSE OF AIDING AND ABETTING FIRST-DEGREE FELONY MURDER

"Murder committed in the perpetration of, or attempt to perpetrate, . . . carjacking . . . and . . . kidnapping" constitutes first-degree felony murder. MCL 750.316(1)(b). "To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). Under Michigan law, it is "clear that one who aids and abets a felony murder must have the requisite malice to be convicted of felony murder,

but need not have the same malice as the principal." *Robinson*, 475 Mich at 14. "[I]f an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with 'wanton and willful disregard' sufficient to support a finding of malice." *Riley*, 468 Mich at 141.

## E. DISCUSSION AND RESOLUTION

In *People v Hayes*, 323 Mich App 470, 473-474; 917 NW2d 748 (2018), this Court provided the following brief and pertinent overview:

> In *Miller* . . ., the United States Supreme Court held that mandatory punishment of life in prison absent the possibility of parole for a defendant who was under the age of 18 at the time of the sentencing offense violates the Eighth Amendment's prohibition against cruel and unusual punishments. The *Miller* Court did not indicate whether its decision was to be retroactively applied to closed cases involving juvenile offenders. In light of *Miller*, the Michigan Legislature enacted MCL 769.25, which provides a procedural framework for sentencing juvenile offenders who have committed offenses punishable by life imprisonment without the possibility of parole; this provision applied to pending and future cases. Anticipating the possibility of *Miller*'s retroactive application for closed cases, the Legislature also enacted MCL 769.25a, which would be triggered if our Supreme Court or the United States Supreme Court were to hold that *Miller* applied retroactively. And subsequently, in *Montgomery v Louisiana*, 577 US [190], 136 S Ct 718, 193 L Ed 2d 599 (2016), the United States Supreme Court held that the rule announced in *Miller*, which was a new substantive constitutional rule, was retroactive on state collateral review. Accordingly, MCL 769.25a took effect.

MCL 769.25(6) provides that "[i]f the prosecuting attorney files a motion . . . [seeking LWOP], the court shall conduct a hearing on the motion as part of the sentencing process[,] [and] [a]t the hearing, the trial court shall consider the factors listed in <u>Miller</u> . . . ." One of the *Miller* factors for a court to consider is "the circumstances of the homicide offense, including the extent of [the minor's] participation in the conduct[.]" *Miller*, 567 US at 477. The *Taylor* Court acknowledged this particular factor. *Taylor*, ___ Mich at ___; slip op at 8.

One of the difficulties that we face in this case is grasping the Supreme Court's expectation of us in relation to the remand directive. Again, the Supreme Court found that we failed to address defendant's argument that his LWOP sentence violated the Eighth Amendment and Const 1963, art 1, § 16, because he was only convicted of felony murder on an aiding-and-abetting theory. *Taylor*, ___ Mich at ___; slip op at 20. In our earlier opinion, we addressed the *Miller* factor regarding the circumstances surrounding the homicide and the extent of the juvenile's participation:

> The next factor is the circumstances of the homicide offense, including the extent of defendant's participation in the conduct and the way familial and peer pressures may have affected him. The fact that defendant did not personally pull the trigger of the gun does not preclude the imposition of a life without parole sentence. There is no categorical bar on the imposition of a life without parole

-6-

sentence on a juvenile convicted of felony murder on *an aiding and abetting theory*. [*Taylor*, unpub op at 4-5 (quotations marks, citations, and brackets omitted; emphasis added).]

This ruling was clearly made in the context of an overall assessment regarding whether there was a violation of the Eighth Amendment and Const 1963, art 1, § 16, with the panel effectively concluding that there is no categorical state or federal constitutional infringement merely because a juvenile murderer was convicted solely as an aider and abettor.

Still examining the same *Miller* factor and having rejected any constitutional categorical-bar argument, we turned our attention to the particular facts of the case and the extent of defendant's participation in the crimes:

Defendant actively participated in the crimes. Defendant admitted to fellow jail inmate Michael Sadur that defendant and Masalmani were trying to "hit a lick," which means to rob someone, and that they noticed the speaker system in Landry's vehicle outside a Quiznos restaurant in Eastpointe. Eyewitness testimony indicated that defendant possessed a weapon and acted as a lookout when Masalmani was trying to force Landry into his vehicle. Defendant told Sadur that, because Masalmani and Landry were struggling, defendant went over and helped to put Landry in the vehicle. Defendant played a critical role in holding Landry captive for several hours before he was murdered, including by sitting on a couch with Landry at a drug house while Masalmani was using drugs; witness Frederick Singleton, who was at the drug house, never saw defendant leave Landry's side at the drug house. Singleton testified that defendant was driving the car when defendant, Masalmani, and Landry arrived at the drug house, while Masalmani and Landry were in the backseat. After leaving the drug house, defendant and Masalmani took Landry to a nearby abandoned house, where either defendant or Masalmani punched Landry and then [Masalmani[3]] shot Landry in the back of the head. Defendant asserts that he did not intend to kill Landry. But defendant told Sadur that when they were in Landry's vehicle after the initial kidnapping, Masalmani pulled out a gun, and defendant and Masalmani then told Landry "what time it was[,]" which meant that they were going to shoot him or injure him badly. This statement was made early in Landry's captivity, suggesting that defendant knew throughout the long criminal transaction that he and Masalmani were going to shoot or badly injure Landry. Defendant told Sadur that, after the shooting, defendant took the murder weapon and sold it because he had not yet obtained any money from the crimes. Sadur testified that defendant exhibited no remorse when describing what occurred. The evidence supports the conclusion that defendant was actively and extensively involved in committing the crimes, and there is no indication that defendant was subjected to any family or peer pressure. Therefore,

---

[3] Due to a clerical error, the opinion had indicated that defendant shot Landry, but this error was corrected by a subsequent order. *People v Taylor*, unpublished order of the Court of Appeals, entered September 30, 2016 (Docket No. 325834).

the trial court properly concluded that this factor did not weigh in favor of defendant. [*Taylor*, unpub op at 5.]

This ruling essentially constituted a determination that under the specific facts of the case, the alleged violation of the Eighth Amendment or Const 1963, art 1, § 16, through imposition of the LWOP sentence was not supported by defendant's argument that he was merely an aider and abettor. Rather, with respect to the extent of defendant's participation in the criminal episode, he was actively and extensively involved in the commission of the crimes. Again, while our discussion was focused on the extent-of-participation *Miller* factor, it was in the context of a larger analysis to determine whether there was a state or federal constitutional violation.

Although we believe that we did indeed address defendant's constitutional arguments tied to his status as an aider and abettor, we shall move forward as commanded by our Supreme Court. One of the offenders in *Miller* was Kuntrell Jackson, and the United States Supreme Court described his offense:

> In November 1999, petitioner Kuntrell Jackson, then 14 years old, and two other boys decided to rob a video store. En route to the store, Jackson learned that one of the boys, Derrick Shields, was carrying a sawed-off shotgun in his coat sleeve. Jackson decided to stay outside when the two other boys entered the store. Inside, Shields pointed the gun at the store clerk, Laurie Troup, and demanded that she "give up the money." Troup refused. A few moments later, Jackson went into the store to find Shields continuing to demand money. At trial, the parties disputed whether Jackson warned Troup that "[w]e ain't playin'," or instead told his friends, "I thought you all was playin'." When Troup threatened to call the police, Shields shot and killed her. The three boys fled empty-handed. [*Miller*, 567 US at 465-466 (citations omitted).]

The *Miller* Court next engaged in its analysis, set forth the new constitutional principles regarding the sentencing of juvenile murderers to LWOP, and then turned its attention back to Jackson, ruling as follows:

> Take Jackson's first. As noted earlier, Jackson did not fire the bullet that killed Laurie Troup; nor did the State argue that he intended her death. Jackson's conviction was instead based on an aiding-and-abetting theory; and the appellate court affirmed the verdict only because the jury could have believed that when Jackson entered the store, he warned Troup that "[w]e ain't playin'," rather than told his friends that "I thought you all was playin'." To be sure, Jackson learned on the way to the video store that his friend Shields was carrying a gun, but his age could well have affected his calculation of the risk that posed, as well as his willingness to walk away at that point. All these circumstances go to Jackson's culpability for the offense. See *Graham* [*v Florida*, 560 US 48, 69; 130 S Ct 2011; 176 L Ed 2d 825 (2010)] ("[W]hen compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability"). And so too does Jackson's family background and immersion in violence: Both his mother and his grandmother had previously shot other individuals. At the least, a sentencer should look at such facts before depriving a

14-year-old of any prospect of release from prison. [*Miller*, 567 US at 478 (citations omitted; alterations in original).]

As is abundantly clear from this passage in *Miller*, the fact that Jackson was convicted as an aider and abettor—without pulling the trigger and absent an intent to kill—did not lead the United States Supreme Court to conclude as a matter of law that the Eighth Amendment categorically barred the state from sentencing Jackson to LWOP. Rather, Jackson's role in aiding and abetting the murder was to be treated as a factor for the lower court to consider when contemplating whether an LWOP sentence was appropriate.

In *People v Carp*, 496 Mich 440, 521-526; 852 NW2d 801 (2014), vacated on other grounds and remanded sub nom *Carp v Michigan*, 577 US 1186 (2016), and sub nom *Davis v Michigan*, 577 US 1186 (2016), our Supreme Court addressed, in part, an LWOP sentence imposed in the context of a case involving a minor who was convicted of aiding and abetting felony murder:

> Davis argues that even if the Eighth Amendment does not categorically bar imposing sentences of life without parole on juvenile homicide offenders, it at least categorically bars imposing life-without-parole sentences on juvenile homicide offenders, such as himself, convicted of felony murder ostensibly on the basis of an aiding-and-abetting theory. At the outset of our analysis, we note that our Legislature has chosen to treat offenders who aid and abet the commission of an offense in exactly the same manner as those offenders who more directly commit the offense[.]
>
> * * *
>
> In combination with *Miller*'s requirement that individualized sentencing account for a juvenile's "lesser culpability," it has been argued that a juvenile offender cannot be sentenced to life without parole when the defendant did not kill, intend to kill, or foresee that life would be taken as a result of the offense, even when the offense of which the offender was convicted was felony murder. Just such a contention was advanced by Justice Breyer in his concurrence in *Miller*, in which, addressing specifically the constitutionality of life-without-parole sentences for juvenile offenders convicted of felony murder on an aiding-and-abetting theory, he stated, "*Graham* dictates a clear rule: The only juveniles who may constitutionally be sentenced to life without parole are those convicted of homicide offenses who kill or intend to kill."
>
> Assuming for the sake of argument that some categorical rule of this nature is the necessary product of *Graham* and *Miller*, it still does not follow that the rule pertains to and encompasses all instances in which a juvenile aids and abets a felony murder. As recognized by Justice Breyer himself, a juvenile who aids and abets a felony murder may have intended the death of any victim of the offense. . . . Further, a juvenile who aids and abets a felony murder may have foreseen that a life might be taken as a result of his offense, but proceeded notwithstanding to engage in the underlying offense with indifference to this risk. Accordingly, when a juvenile can be convicted of felony murder on an aiding-and-abetting theory while either

intending to kill or having foreseen the possibility that a life could be taken, any categorical rule gleaned from *Graham* pertaining to the limited situation in which a juvenile homicide offender lacked the intent to kill and did not foresee the possibility that a life could be taken will once again not categorically bar the imposition of a sentence of life without parole for that offense.

This conclusion is entirely consistent with, and arguably dictated by, the individualized sentencing process required by *Miller*. In seeking to assess a juvenile offender's moral culpability, *Miller* instructs trial courts to consider the circumstances of the particular offense and the character and propensities of the offender. A categorical rule altogether foreclosing a trial court from imposing a life-without-parole sentence on a juvenile convicted of felony murder on an aiding-and-abetting theory obviates the necessity for any evaluation of either the circumstances of the individual defendant's offense or the individual defendant's character. Such a categorical rule would permit a defendant to avoid a life-without-parole sentence for aiding and abetting a felony murder even if the defendant was closely nearing the age of 18 at the time of the offense, intended the death of the victim by instructing a coconspirator to fire the fatal shot, and had had previous encounters with the criminal justice system that demonstrated a lack of amenability to rehabilitation. Because it is not difficult to imagine such a defendant, and because imposing a life-without-parole sentence on that defendant would be warranted and entirely constitutional under *Miller*, we reject Davis's facial challenge and his contention that the Eighth Amendment categorically bars the imposition of a life-without-parole sentence on a juvenile convicted of felony murder on an aiding-and-abetting theory. [Quotation marks and citations omitted.[4]]

---

[4] With respect to Const 1963, art 1, § 16, the Supreme Court in *Carp* noted:

[Our] holding carries with it the conclusion that some juveniles convicted of felony murder on an aiding-and-abetting theory might be as morally culpable for their crimes as juveniles who commit premeditated first-degree murder and not simply as legally culpable. A juvenile convicted of felony murder on an aiding-and-abetting theory can be said to have committed as grave an offense as a juvenile who commits premeditated first-degree murder. Accordingly, for the purpose of Davis's challenge under Const 1963, art 1, § 16, the first two factors of the . . . proportionality test will be resolved in a fashion identical to how they were resolved for life-without-parole sentences generally. Concerning the third factor, Davis fails to present any data specific to how other jurisdictions sentence juveniles convicted of felony murder on an aiding-and-abetting theory, only putting forth a sampling of how a very few states now sentence juveniles convicted of first-degree murder generally. In the absence of evidence to the contrary, we are left to assume that a majority of other states hold aiders and abettors equally responsible for their offenses. Accordingly, the third factor also counsels against a finding of disproportionality. Because only the fourth factor of the . . . proportionality test,

The *Carp* Court closed out its opinion by ruling "that neither the Eighth Amendment nor Const 1963, art 1, § 16 categorically bars the imposition of a sentence of life without parole on a juvenile first-degree-murder offender or a juvenile convicted of felony murder on the basis of an aiding-and-abetting theory." *Carp*, 496 Mich at 528.

Defendant argues that *Carp* was vacated and thus has no precedential value. We disagree. Our Supreme Court's decision in *Carp* was vacated with respect to its ruling that *Miller* was not retroactive in light of the ruling by the United States Supreme Court in *Montgomery* that *Miller* indeed had retroactive application. *Carp v Michigan*, 577 US 1186 (2016), sub nom *Davis v Michigan*, 577 US 1186 (2016); see also *People v Barnes*, 502 Mich 265, 272; 917 NW2d 577 (2018) ("*Carp* was vacated on unrelated grounds"). Other aspects of *Carp*, including its ruling with respect to aiders and abettors, remain controlling. In fact, our Supreme Court itself has recently cited *Carp* for propositions unrelated to retroactivity, see *Stovall*, ___ Mich at ___; slip op at 10; *Parks*, ___ Mich at ___; slip op at 24, as has this Court, see *People v Williams*, 328 Mich App 408, 413; 938 NW2d 42 (2019).

Accordingly, on the basis of *Miller* and *Carp*, we hold that for purposes of the Eighth Amendment and Const 1963, art 1, § 16, defendant in this case can potentially be sentenced to LWOP for first-degree felony murder even though he was convicted as an aider and abettor—there is no categorical bar to an LWOP sentence.[5] On remand, however, it is necessary for the trial court to implement the procedures and apply the legal framework set forth by our Supreme Court in *Taylor*.

In his brief on appeal, defendant also presented an argument that under the facts of this particular case, i.e., where he only aided and abetted the murder and Masalmani was the one who actually shot Landry, the LWOP sentence was unconstitutional, constituting cruel and unusual punishment. We construe the Supreme Court's remand directive as requiring us to rule on whether there is a categorical bar to imposing an LWOP sentence when a juvenile merely aids and abets first-degree felony murder, such that defendant's LWOP sentence violated the Eighth Amendment or Const 1963, art 1, § 16. Had we ruled that a categorical bar exists, it would be dispositive and require the trial court to impose a term of years. See *Taylor*, ___ Mich at ___; slip op at 2 ("Because the Court of Appeals failed to address a separate constitutional issue that could be dispositive, . . . we remand this case to the Court of Appeals . . . ."). If we were to analyze the question whether the extent of defendant's aiding and abetting in this case was so minimal that there necessarily was a violation of the Eighth Amendment or Const 1963, art 1, § 16, the analysis

---

pertaining to rehabilitation, favors holding life-without-parole sentences for juveniles convicted of felony murder on an aiding-and-abetting theory unconstitutional, Davis's facial challenge under Article 1, § 16 fails as well. [*Carp*, 496 Mich at 526 n 42.]

---

[5] We note that given our ruling, there is no need to delve into and resolve the preservation issue. Regardless whether we apply plain-error analysis or not, defendant is not entitled to a disposition barring an LWOP sentence.

would have to entail contemplation and evaluation of all the *Miller* factors. This would require our intruding on the trial court's role of first engaging in the *Miller* analysis under "the correct legal framework" envisioned and ordered by the Supreme Court. See *id.* For this reason, we conclude that we were only tasked with determining whether a categorical constitutional bar precludes an LWOP sentence when a juvenile aided and abetted a murder and was not the principal. To the extent that we are incorrect in our construction of the *Taylor* opinion issued by the Supreme Court, we rule that our stance remains unchanged from that set forth in our earlier opinion where we found "that defendant was actively and extensively involved in committing the crimes" despite the fact that he was an aider and abettor and did not pull the trigger. *Taylor*, unpub op at 5. Thus, on remand, defendant can potentially be sentenced to LWOP. Stated otherwise, defendant is not entitled to a ruling in his favor from us no matter how we interpret the Supreme Court's remand order.

Finally, we do believe that further discussion is warranted because of recent opinions issued by the Michigan Supreme Court, specifically the opinion in this case, *Taylor*, and in *Stovall.* In *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191-193; 880 NW2d 765 (2016), our Supreme Court admonished this Court, stating:

> The Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined. Thus, while we agree with the result of the Court of Appeals' decision, we disapprove of its usurpation of this Court's role under our Constitution.
>
> * * *
>
> The Court of Appeals erred . . . by disregarding precedent from this Court that has not been clearly overruled by the Court or superseded by subsequent legislation or constitutional amendment. It is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority. [Quotation marks, citations, brackets, and emphasis omitted.]

As indicated earlier, in this very case, our Supreme Court held "that, as the moving party at a *Miller* hearing, the prosecutor bears the burden to rebut a presumption that LWOP is a disproportionate sentence[, and] [t]he standard for rebuttal is clear and convincing evidence." *Taylor*, ___ Mich at ___; slip op at 1-2. Our Supreme Court in *Carp* rejected a categorical bar to an LWOP sentence when a juvenile offender is convicted for murder under an aiding-and-abetting theory, but it did not analyze the issue in the context of the rebuttable presumption later created by the Supreme Court in *Taylor.* In other words, in light of the presumption of a disproportionate sentence that can only be overcome by clear and convincing evidence, does it become impossible in even the worst aiding-and-abetting scenario, e.g., where the aid is extensive and there is an intent to kill, to overcome the presumption such that a categorical bar must be applied, rendering *Carp* obsolete. We conclude that it simply is not our place to evaluate whether *Carp* is obsolete on this particular issue and whether *Taylor* undermined or effectively overruled *Carp* on the matter; only the Supreme Court has the constitutional authority to make those determinations.

-12-

We reach the exact same conclusion with respect to the Supreme Court's opinion in *Stovall*, wherein the Court held that there is a categorical bar to sentencing a juvenile offender to life imprisonment with the possibility of parole for second-degree murder, *Stovall*, ___ Mich at ___; slip op at 15, which is a crime that requires proof of malice, *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007).[6] Accordingly, the Supreme Court took the position that a minor who directly kills another person with malice, but without premeditation and deliberation, cannot be sentenced to even *parolable* life as a matter of law. We therefore tend to believe that the Supreme Court might favorably view a categorical bar to LWOP where a juvenile—with malice but without premeditation and deliberation—does not directly kill a victim but only aids and abets the crime, even though an underlying felony would also be in play. We cannot, however, make the determination that the *Stovall* Court clearly intended to overrule or modify *Carp* in regard to felony-murder cases involving aiding and abetting. That is an issue solely for the Supreme Court to resolve. We will not overstep our bounds.

We remand the case to the trial court for resentencing consistent with this opinion and the directives set forth in *Taylor*, ___ Mich at ___; slip op at 2, 20. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan

---

[6] First-degree felony murder also requires proof of malice. *People v Aaron*, 409 Mich 672, 733; 299 NW2d 304 (1980).